519 A.2d 546

Sameric Corporation of Valley Forge, Appellant *v.* Valley Forge Center Association and Upper Merion Township, Appellees.

Argued November 20, 1986, before Judges CRAIG, DOYLE and COLINS, sitting as a panel of three.

*J. Shane Creamer*, with him, *Richard A. Sprague*, *Bruce L. Thall* and *Geoffrey R. Johnson, Sprague, Thall & Creamer*, for appellant.

*William J. Brennan*, with him, *James E. Meneses*, *Meneses & Dean*, for appellee, Upper Merion Township.

OPINION BY JUDGE CRAIG, December 24, 1986:

In this equity case involving zoning enforcement, the question is whether a trial court may resolve factual

disputes, concerning compliance with shopping center parking space requirements, by considering contradictory affidavits, in lieu of receiving testimony and exhibits at an evidentiary hearing.

## Factual History

Appellant Sameric Corporation, as a tenant of one of the 60 stores in the Valley Forge Shopping Center of Upper Merion Township, is a movie theater operator in a store-space formerly occupied by the bowling alley of another tenant.

The shopping center is one already in existence, having been constructed by its owner, Valley Forge Center Associates, pursuant to a development plan which Associates submitted and the township approved in 1980. Both the former bowling alley and the proposed theater are uses unconditionally permitted in this SC District pursuant to sections 1100A and 1000E of the Upper Merion Township Zoning Ordinance. Moreover, the replacement of a bowling alley by a theater results in no change in the off-street parking ratio, which, as noted below, does not vary as to type of use.

Nevertheless, when Sameric applied for its permits in late 1983, the township required Sameric, a tenant of one store out of 60, to submit a new development plan showing off-street parking for the entire shopping center, even though (1) sections 1800-1803 of the ordinance apply the development plan submission obligation only to the "owner or owners," and (2) Sameric made no building enlargement and thus did not come under section 1908, which requires a new development plan only when a building is enlarged by 25% or 5000 square feet.

Under section 1102A of the ordinance, the minimum number of parking spaces required in a shopping center of this size is

5.5 car spaces per 1000 square feet of gross leasable area in the shopping center. . . .

The same section defines "gross leasable area" as follows: Gross leasable area is the total floor area designed for tenant occupancy including basements, mezzanines and upper floors, if any, expressed in square feet measured from the center lines of joint partitions and exteriors of outside walls. The gross leasable area shall not include the area of any common malls, walkways, public facilities, loading docks or mechanical and electrical equipment penthouses and rooms.

Sections 1102B and 1102C prescribe general non-quantitative standards for loading areas, entrances and accessways, in terms of adequacy, convenience, safety and avoidance of congestion.

According to the pleadings and briefs, there is no dispute concerning the factual history and ordinance provisions stated above.

The heart of the crucial factual dispute in this case is whether Sameric's development plan implementation has achieved compliance with the off-street parking requirements. The opposing affidavits of the parties differ widely. Sameric claims that the center's gross leasable area is 190,984 square feet, so that a parking ratio of 5.5 per 1000 would require 1051 spaces. Sameric's averment is that 1120 spaces exist, 69 more than required.

The township's affidavit claims that only 152 proper spaces exist, averring that 1111 other purported spaces are illegal in size or positioning. The township's computations call for 1219 valid spaces, derived by applying the 5.5 per 1000 ratio to a gross leasable area of 221,597 square feet, which Sameric contends is the total building area of the center without deduction for the exclusions allowed by section 1102A.

Of course, the township's low number as to valid spaces is at least puzzling, in light of the fact that this center has previously existed for several years with parking spaces which necessarily would have been approved in order to permit construction and opening of the center.

The township's pleadings also contend that other violations exist, with respect to vehicle barrier posts, green areas and bus parking area.

## Procedural History

Sameric initiated the litigation below in 1986 by filing an equity action against the landlord owner, Associates, to compel its cooperation in Sameric's obtaining of permits, and also against the township to procure the issuance of an occupancy permit for the theater. Sameric's complaint did not proceed to a closing of the pleadings or to trial because its counsel and the township solicitor, pursuant to conferences with the court, twice agreed to a stipulation for the issuance of a temporary occupancy permit.

After the township declined to honor its solicitor's stipulation for a second time, Sameric filed a motion to enforce the stipulation, pursuant to which the court issued its order of July 15, 1986, enforcing the stipulation by authorizing Sameric to operate its theater subject to Sameric's compliance, by August 15, 1986, "with all conditions previously imposed by The Upper Merion Township Board of Supervisors with regard to the development of the Queen Theater Complex. . . ." The order also required Sameric to post a bond and declared that the authorization to operate was "pending completion . . . of all of the improvements called for in the approved development plan. . . ."

Because that order of July 15 embodied a mutual stipulation, it was similar to a consent order. In para-

graph 4, the order indicated a retention of jurisdiction, in that the trial court declared that it would issue a cease-and-desist order one month later if Sameric did not achieve compliance. Accordingly, neither party filed any appeal as to that order.

Early in September of 1986, the township filed a "Request for Implementation of Order," referring to the July 15 order, and, as noted above, averring various matters of non-compliance by Sameric with respect to parking facilities.

As titled, that "Request" fits no category of pleading expressly covered in the Rules of Civil Procedure governing equity actions. An accurate characterization is that it constituted an equitable counterclaim pursued by the township to obtain zoning enforcement, in accordance with section 617 of the Pennsylvania Municipalities Planning Code (MPC),[1] which expressly authorizes municipalities to institute a "proceeding to prevent, restrain, correct or abate" zoning ordinance violations.

According to the record, the trial court considered that request of the township, and Sameric's response to it, by weighing the parties' widely differing affidavits and by holding a two-hour conference in chambers. Without conducting an evidentiary hearing as sought by Sameric, the trial court proceeded to issue an order of October 14, 1986 finding that Sameric "has failed to complete all of the improvements called for in the approved development plan. . . ." The order also found that the township had not unduly withheld approval and accordingly directed Sameric "to cease and desist all operations" of the movie theater.

Thereafter, the trial court stayed its October 14 order until Sameric filed its appeal of that order in this

---

[1] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10617.

court, and this court has allowed a stay during the appeal, with expedited briefing and argument.

### *The Township's Demands To Quash or Dismiss This Appeal*

Without responding directly to Sameric's appellate issue claiming legal entitlement to an evidentiary hearing for resolution of the disputed factual matters, the township's brief insists that this appeal attacks the stipulation order of July 15 and should therefore be quashed on the ground that Sameric did not contest that order.

However, this position of the township assumes an incorrect premise because the record before us declares that this appeal is from the enforcement order of October 14, not from the stipulation order of July 15.

Although Sameric does contend that it should not have been required to submit a new development plan, that contention must fail because Sameric clearly waived the point by (1) actually submitting the new development plan and (2) entering into the stipulation which was the foundation of the July 15 order mandating compliance with "all conditions previously imposed by the township," which necessarily included the new plan.

Accordingly, Sameric clearly has accepted the July 15 order as establishing the requirements for continuing its use and therefore is necessarily and expressly pursuing this appeal to contest the October 14 determination that it has violated that requirement.

The township contends that the October 14 order is "unappealable" in that, by its own terms, it is merely an "implementation" of the order of July 15. Of course, the October order is more than that; it is a factual adjudication that Sameric's actions *after* July 15 did not achieve compliance, and it is that adjudication which is questioned by this appeal.

Without any citation of case authority, the township also contends that Sameric should initially have proceeded by way of a zoning board appeal rather than by way of an equity action. However, that claim overlooks the point that the appealed October 14 order relates to the township's enforcement proceeding, founded upon the authority of section 617 of the MPC. With the zoning ordinance requirements established in court by stipulation confirmed on July 15, Sameric's initiative was displaced by the township's demand for equitable relief against the alleged violations.

*Board of Supervisors of Brandywine Township v. Matlack,* 38 Pa. Commonwealth Ct. 366, 368, 394 A.2d 639, 641 (1978) confirms that, in view of section 617 of the MPC, equity has jurisdiction to enforce compliance with a zoning ordinance at the instance of a municipality. Because the township here sought and was successful in obtaining the enforcement order which Sameric contests and the township defends, the township's claim that the court issuing that order had no equity jurisdiction is difficult to understand.

Finally, the township brief—also without citation of any case authority—appears to contend that, in the alternative, if this appeal is from the October 14 order, the appeal should be dismissed because of Sameric's failure to file "exceptions" to that order. Because Pa. R.C.P. No. 1518, dealing with equity exceptions, was rescinded several years ago, the township apparently is referring to Pa. R.C.P. No. 227.1, which requires the filing of post-trial motions, following a non-jury adjudication by a judge, in order to arrive at an appealable final order.

Although the unusual pattern of the proceedings in this case presents elements which are not readily recognizable in terms of the Rules of Civil Procedure, the order of October 14 can accurately be characterized as

an injunction, in that its key provision is that Sameric is "DIRECTED to cease and desist all operations" of its theater as of October 17, 1986.

Of course, Pa. R.A.P. 311(a)(4) expressly allows an interlocutory appeal from an order granting an injunction. Although interlocutory appeals are allowable only from preliminary injunctions, and not from final ones, *Humphries v. Cain,* 84 Pa. Commonwealth Ct. 222, 474 A.2d 353 (1984), the order of October 14 cannot be regarded as a final injunction order, or as a decree nisi relating to the same, because there has been no final equity hearing—indeed, no hearing at all—on the key question with which the order deals, which is whether Sameric failed to comply with the order of July 15 during the period thereafter.

Moreover, we note that trial judge's supersedeas order, of October 16, 1986, is at least not inconsistent with treating the October 14 order as an appealable order in the nature of a preliminary injunction directing the cessation of a course of action.

### Record and Findings Required for Review

By noting that the October 14 order, here at issue, awarded injunctive relief without a hearing, we come back to the central issue which Sameric has posed upon this appeal. Sameric cites *Allstate Insurance Co. v. Fioravanti,* 451 Pa. 108, 299 A.2d 585 (1973), in which the Pennsylvania Supreme Court stated that adjudicative action as to factual issues cannot be validly taken by a court except pursuant to a hearing, in which each party may hear the evidence against that party's cause, may cross-examine witnesses and may introduce evidence upon the party's own behalf.

Treating the order of October 14 as one in the nature of a preliminary injunction, we must note that Pa. R.C.P. No. 1531(a) allows the issuance of a preliminary

injunction "only after written notice and hearing, unless it appears . . . that immediate and irreparable injury will be sustained . . . in which case the court may issue a preliminary . . . injunction without a hearing. . . ." Here, of course, the record contains no averment or indication of immediate and irreparable injury being involved. Even though there may be no absolute duty on a court to grant an evidentiary hearing on an application for preliminary injunction, refusal to grant a hearing is error where it amounts to an abuse of discretion, *Commonwealth v. Schall*, 6 Pa. Commonwealth Ct. 578, 297 A.2d 190 (1972).

In this case, in the face of the widely contradictory content of the parties' respective affidavits concerning parking space compliance, the impossibility of exercising appellate review is apparent; necessary findings are absent, and there is no testimony permitting the trier of fact to decide which of the differing interpretations is more acceptable or, perhaps, more credible.

Therefore, this court has no alternative except to remand this case for a hearing on the matters of alleged noncompliance with the zoning ordinance, as averred in the township's motion for enforcement. Reception of testimony, as well as exhibits, will be necessary in order to arrive at specific findings concerning:

1. Nature, meaning and content of "all conditions previously imposed by the Upper Merion Township Board of Supervisors with regard to the development of the Queen Theater Complex," which the parties' stipulation specified as Sameric's compliance obligation;

2. In accordance with section 1102A of the Zoning Ordinance, the number of square feet of total floor area designed for tenant occupancy in the shopping center;

3. In accordance with the same section 1102A, the number of square feet to be excluded from total floor area to determine gross leasable area;

4. In accordance with the same section 1102A, the numerical amount of square feet in "gross leasable area" and the total number of parking spaces therefore required;

5. The number of parking spaces actually provided in the shopping center in accordance with the zoning ordinance specifications for parking spaces; and

6. Compliance or noncompliance with matters other than off-street parking as to which Sameric assumed obligations of compliance in accordance with the provision in the stipulation quoted above.

Without the reception and weighing of evidence and the development of findings of fact as above stated, there is no way in which this court can review the matter of whether or not compliance has been achieved.

## ORDER

Now, December 24, 1986, the order of the Court of Common Pleas of Montgomery County, dated October 14, 1986, is vacated, and this case is remanded to that court to conduct a hearing with respect to the matters of alleged noncompliance with the zoning ordinance, as averred in the motion for enforcement filed by Upper Merion Township, and for findings of fact as listed in the foregoing opinion.

Jurisdiction is retained, and the stay heretofore issued by this court shall remain in effect until further order of this court.