**Erin D. SEDOR, Appellant,**

v.

**WEST MIFFLIN AREA SCHOOL DISTRICT and Vern's Electric, Inc.**

Commonwealth Court of Pennsylvania.

Argued June 8, 1998.

Decided June 30, 1998.

---

Anthony J. Guida, Jr., Pittsburgh, for appellant.

W. Alan Torrance, Jr., Pittsburgh, for appellee, Vern's Electric, Inc.

Beth S. Mills, Pittsburgh, for appellee, West Mifflin Area SD.

Before PELLEGRINI, J., KELLEY, J. (P.) and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Erin D. Sedor (Sedor), a taxpayer, appeals from an order of the Court of Common Pleas of Allegheny County (trial court) that denied Sedor's Motion for Special Relief and /or Preliminary Injunction. The trial court also refused to hold a hearing on the motion, concluding that the doctrine of laches barred Sedor's claim. We reverse and remand.

The following recitation of facts was gleaned from the averments contained in Sedor's Complaint in Equity and her Motion for Special Relief and/or Preliminary Injunction. On December 15, 1997 the West Mifflin Area School District (School District) issued an advertisement for bid for electric work in connection with additions and renovations to the West Mifflin Area High School. Sealed bids were to be submitted to the School District containing two base bids, one to include a construction manager and the other without a construction manager. The School District had not decided whether to proceed with electrical work on a swimming pool and, therefore, required bids in the original bid form to include a base bid for the entire project including the swimming pool as well as an alternate bid that was an amount to be *deducted* from the base bid if the District decided not to proceed with the work on the swimming pool.

The School District then amended its advertisement for bid requiring that the responsive base bids not include any work for the swimming pool, changing its alternative to an add, meaning that work related to the swimming pool was to be *added* to the base bid in the event the School District decided to proceed with that work. A revised bid form was included in the addendum.

Vern's Electric, Inc. (Vern's Electric) was one of six bidders for the electrical work. On a proper form Vern's Electric's base bid with a construction manager was $2,545,517

and its alternative relating to the swimming pool was $134,454. Vern's Electric's base bid for the work without a construction manager was also $2,545,517 and its alternative relating to the swimming pool was also $134,454. However, this bid without the construction manager was submitted on an improper form, so that instead of including the swimming pool work as an addition to the base bid that amount was deducted from the base bid. Apparently, the School District decided that it would proceed without a construction manager and with the swimming pool work. This was the form of the project for which Vern's Electric's bid was submitted on the incorrect form.

Sedor alleged that after the bids were opened and the addition/deduction error (wrong form) was discovered, the School District allowed Vern's Electric to withdraw its bid. However, Vern's Electric agreed to perform all electric work including the swimming pool work for the base bid minus the $134,454, resulting in Vern's Electric's agreement to perform the electrical work for $268,908 less than it had actually intended. Sedor also alleged that she believed that Vern's Electric would not have been the lowest responsible bidder if the proper form had been used, i.e., the cost of the swimming pool work would have been added to the base bid and another bid would have been lower. Sedor also contended that the discussion between the School District and Vern's Electric following the opening of the bids was unlawful, was not the type of irregularity that could be waived by the School District and did not overcome the requirement that bids be responsive to the specifications. As a result of the awarding of the bid to Vern's Electric on February 23, 1998, Sedor contended that she and other taxpayers suffered irreparable harm in that the purpose of competitive bidding exists not solely to secure work or supplies at the lowest possible price, but to guard against favoritism, fraud or corruption.[1] Sedor requested that the court

issue an injunction preventing the awarding of the contract to Vern's Electric and declaring that any contract signed by the parties be considered void.

Sedor's Complaint in Equity and Motion for Special Relief and/or Preliminary Injunction were both filed on March 23, 1998, a month after the bid was awarded to Vern's Electric. When the parties appeared before the trial court, the attorney representing Sedor indicated to the court that he believed no testimony was required because the parties essentially agreed to the facts. Sedor's attorney then presented the arguments outlined above, further contending that Vern's Electric's bid if submitted correctly would not have been the lowest responsible bid. After hearing arguments on Sedor's motion, the trial court denied the request for preliminary injunction and refused to grant a hearing date. The trial court explained that its refusal to take evidence on the day the motion was presented or to schedule a hearing date for the taking of evidence was controlled by the doctrine of laches.[2]

The trial court explained that although no pre-set limitations period existed when applying the laches doctrine, a court must examine whether there is and to what extent there is harm to the opposing party. Based on the following "undisputed" facts, the trial court held that laches barred Sedor's claim:

Plaintiff knew on or before February 23, 1998 that Vern's Electric had in fact been awarded the bid. By the time Plaintiff came into Court on March 25, 1998, a month had passed. At oral argument on Plaintiff's demand for an immediate injunction (which, under Rule 1531, in appropriate cases, can be granted pending a hearing within five days), Defendants pointed out that the contract had been signed, materials bought and other actions taken by the successful bidder, Vern's Electric, Inc., to perform the contract, and the work, on a school, was scheduled to begin on April 1, 1998, seven days later. (Plain-

1. *Conduit and Foundation Corp. v. City of Philadelphia*, 41 Pa.Cmwlth. 641, 401 A.2d 376 (1979). *Also see Kimmel v. Lower Paxton Township*, 159 Pa.Cmwlth. 475, 633 A.2d 1271, *petition for allowance of appeal denied*, 538 Pa. 617, 645 A.2d 1320 (1994).

2. The trial court noted that it had done nothing to prevent the Complaint in Equity to proceed in the normal course.

tiff did not dispute this or even suggest that it was unlikely to be true.) Plaintiff's delay in attacking the winning bid by filing the instant action was explained only by the fact that it took the unsuccessful bidder several weeks to find a taxpayer, Plaintiff, to complain of the bidding process.

(Trial court's opinion, p. 5). Thus, having decided that the doctrine of laches applied, the trial court concluded that "no evidentiary hearing was needed to determine whether the other prerequisites for the grant of a preliminary injunction had been met." *Id.*

On appeal to this Court,[3] Sedor raises the following issues: 1) whether the award of the contract violated the principles of competitive bidding and caused irreparable harm to the taxpayers, and 2) whether the trial court erred in refusing to schedule a hearing on the motion for preliminary injunction.

■■■■ A portion of Sedor's argument rests on her contention that no facts of record support a finding of laches. "For laches to apply, there must be a lack of due diligence in pursuing a cause of action and resulting prejudice to the other party." *In re General Election for District Justice*, 543 Pa. 216, 231, 670 A.2d 629, 636 (1996). The party asserting laches, here the School District and Vern's Electric, must establish that they are prejudiced by the period of inordinate delay by the other party, here Sedor. *United Brotherhood of Carpenters and Joiners of America, Local 261 v. Pennsylvania Human Relations Commission*, 693 A.2d 1379 (Pa. Cmwlth.1997). "Moreover, the question of laches is a factual one and is determined by examining the circumstances of each case." *Id.* 693 A.2d at 1383. Proof of the elements of laches must be clear on the face of the record. *Meier v. Maleski*, 167 Pa.Cmwlth. 458, 648 A.2d 595 (1994). The factual nature of the defense of laches generally requires a hearing. *Id.*

■■■ . Although the trial court makes reference to "undisputed" facts and despite the statement by Sedor's attorney that no testimony was required, our review reveals the existence of a very limited record. Specifically, the certified record contains Sedor's Motion for Special Relief and/or Preliminary Injunction, Sedor's Complaint in Equity with exhibits attached,[4] Sedor's Motion to Expedite Discovery, Sedor's Brief in Support of Motion for Special Relief and/or Preliminary Injunction, the transcript of the argument before the trial court, and the trial court's opinion and order. Obviously, the "undisputed" facts that the trial court relied on in making the decision were those contained in the documents and offered by the attorneys during argument. These are not facts of record. Pursuant to *Meier*, a hearing should have been held, so that a record was made containing facts to prove the elements of laches or beyond that to provide a basis upon which a preliminary injunction could be issued or denied. In the alternative, if the parties recognized that no evidence was necessary because there was agreement as to the facts, a stipulation as to the agreed upon facts should have been signed and entered into evidence at the outset.

■■■ Although there is no absolute right to a hearing on a preliminary injunction, "our rules and our case law clearly indicate that a hearing is customarily held and is the preferred procedure." *Bell Fuel Corp. v. Cattolico*, 375 Pa.Super. 238, 544 A.2d 450, 455 (1988), *appeal denied*, 520 Pa. 612, 554 A.2d 505 (1989). *See also Sameric Corp. of Valley Forge v. Valley Forge Center Association*, 102 Pa.Cmwlth. 581, 519 A.2d 546 (1986). The *Bell* court further stated that "[i]t is the rare preliminary injunction that can correctly be denied without a hearing...." *Id.* In *Bell* the appellate court noted that the trial court had assumed and found certain facts to be as the party requesting the preliminary injunction had alleged. Then based on these assumed facts the trial court incorrectly de-

---

3. Sedor requested an expedited appeal that was granted by this Court. Sedor also requested an injunction pending appeal. After argument on the injunction pending appeal, that request was denied.

4. The exhibits to the Complaint are copies of the bid forms issued by the School District and a copy of the bid form submitted by Vern's Electric and accepted by the School District.

cided a number of crucial issues. The appellate court concluded that based on those errors a remand for a hearing was necessary.

Likewise, here the trial court apparently believed that it had little or no power to enjoin the performance of the contract after it had been entered into by the parties. This statement alone raises a number of issues in that no contract was produced and entered into evidence. The trial court had no facts of record on which to base a conclusion that a contract was in fact in effect and determining that as a result the request for preliminary injunction was moot. Moreover, we note and Sedor argues that the awarding of the contract is the significant event, not the signing of the contract, citing *Muncy Area School District v. Gardner*, 91 Pa.Cmwlth. 406, 497 A.2d 683, 686 (1985) ("A public contract has its inception in the award as distinguished from the formal signing of the contract, and is binding from that time on."). Performance can be enjoined after the awarding of the public contract. *American Totalisator Co., Inc. v. Seligman*, 489 Pa. 568, 414 A.2d 1037 (1980). Without a factual basis on the record none of these legal issues can be addressed as they relate to what occurred in this matter.

We conclude that the trial court erred by not holding a hearing to ascertain the facts and make a record that would form the basis for conclusions concerning whether the doctrine of laches applies and whether a preliminary injunction should be entered.

Accordingly, we reverse the court's order and remand the case for a hearing consistent with this opinion.

### ORDER

NOW, June 30, 1998, the order of the Court of Common Pleas of Allegheny County, at No. 98–4937, dated March 26, 1998, is reversed and the case is remanded for a hearing consistent with the foregoing opinion.

Jurisdiction relinquished.