598 A.2d 594

**LINCOLN REALTY MANAGEMENT COMPANY, Petitioner,**

v.

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 10, 1991.

Decided Oct. 17, 1991.

James M. Penny, Jr., for petitioner.

Nancy L. Gippert, Asst. Chief Counsel, for respondent.

Before PALLADINO and McGINLEY, JJ., and BARRY, Senior Judge.

McGINLEY, Judge.

Lincoln Realty Management Company (Lincoln), the manager of Audubon Court Apartments (Audubon), appeals an order of the Pennsylvania Human Relations Commission (Commission) issued August 28, 1990, as a result of a complaint filed with the Commission by Sally Atkinson (Atkinson), a tenant at Audubon. The Commission determined that Lincoln ejected Atkinson from her apartment solely because of her physical disability, and rejected any reasonable accommodations she proposed in violation of the provisions of the Pennsylvania Human Relations Act (Act).[1] Reproduced Record (R.R.) at 3a. We affirm in part and vacate and remand in part.

Atkinson, who is extremely sensitive to a variety of chemicals and chemical products, entered into a one-year lease agreement for a unit in Audubon's Building C beginning in February, 1986.[2] By letter dated May 6, 1986 Lincoln informed Atkinson that her lease would not be renewed for the upcoming year as Lincoln was unable to provide her with the special treatment and precautions her condition demanded. Atkinson did not vacate her apartment at the expiration of the lease term in February of 1987, and filed a complaint with the Commission. Additionally, on June 22, 1987, Atkinson obtained an injunction in the Montgomery County Court of Common Pleas enjoining Lincoln from using "any pest control substance, device or

1. Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–963.

2. Audubon consists of twelve buildings, which in combination contain 175 rental units.

methodology not approved by [Atkinson], anywhere in the north side of building Unit C, and to provide 48 hours notice of any spray or 'bomb' application to any other building or grounds within 100 feet of building Unit C, until [Atkinson] 'no longer occupies her unit or 45 days from this date, whichever occurs first." [3] Lincoln has not repainted Building C and no pest control has been undertaken in the building since the commencement of Atkinson's tenancy.

A hearing was held before the Commission on June 14 and 15, 1990. At the hearing, Atkinson testified that she was diagnosed as suffering with multiple chemical sensitivity in June, 1984. Notes of Testimony, June 14, 1990 (N.T. 6/14/90) at 31. Atkinson presented a letter from her physician which states that Atkinson is unable to tolerate the presence of various chemical compounds, including but not limited to certain pesticides and herbicides. Claimant's Exhibit 16, R.R. at 632a. Atkinson testified that conditions in Audubon were tolerable when she moved into her apartment. N.T. 6/14/90 at 46.

The hearing examiner found that Atkinson is handicapped within the meaning of the Act, that she established a prima facie case of discrimination, and that Lincoln did not make reasonable accommodations for her, and that Lincoln did not demonstrate that making reasonable accommodations imposed an undue hardship. Recommendations of the Permanent Hearing Examiner, August 28, 1990, at 42. The hearing examiner set forth the following remedial measures:

1) Should Atkinson desire to do so, Lincoln shall permit Atkinson to install a kitchen ceiling fan in unit C–301 by a licensed electrician of her choice, subject to the approval of Lincoln, the cost to be borne by Atkinson,

2) Lincoln shall cause the dishwasher in unit C–301 to be removed and the pipes sealed to prevent odors from seeping into unit C–301, the cost to be borne by Lincoln.

---

**3.** Lincoln voluntarily agreed to extend the terms of the injunction until all litigation is settled.

3) Should Atkinson desire to do so, Lincoln shall permit Atkinson to install a washer and dryer in unit C–301, cost to be borne by Atkinson,

4) Lincoln shall install an exhaust fan in the laundry room of building C ... and install a control switch on the first floor level, the cost to be borne by Lincoln.

5) When deemed appropriate, Lincoln shall either paint or wallpaper the hallways of building C, and if painted, Lincoln shall use a less toxic paint product. Prior to painting, Lincoln shall discuss the choice of paint with Atkinson and allow Atkinson to submit the name of a recommended product for Lincoln's consideration. Any increased cost of a less toxic product or its application shall be borne by Lincoln.

6) Lincoln shall attempt pest control in and around building C by formatting a ... strategy which first strives to address any pest problem with the least toxic pesticide application possible. Lincoln shall discuss their plan with Atkinson well in advance of any actual treatments and give due consideration to any recommended course of action Atkinson may submit. Should either less toxic products or their application cost additional money, Lincoln shall bear the added costs.

7) Lincoln shall permit Atkinson to either cover her floors with tolerable floor coverings or leave them bare. The cost of personal floor coverings, if any are installed by Atkinson, shall be borne by Atkinson. When Atkinson vacates the unit, no additional cost shall be assessed by Lincoln for Atkinson's prior removal of carpeting.

8) Within 100 feet of building C, Lincoln shall attempt to implement an organic lawn care program, the cost thereof to be borne by Lincoln.

9) Lincoln shall provide to Atkinson at least two weeks notice of all pest treatments and lawn maintenance at Audubon which use toxic materials of any sort. Such notice shall include an accurate description of the scope of treatments and products to be used.

10) Lincoln shall continue to give Atkinson advance notice of all painting to be done in building C.

Recommendations of the Permanent Hearing Examiner, at 42–44.

The Commission adopted the opinion of the Hearing Examiner in its order, directing Lincoln to cease and desist from discriminating on the basis of handicap/disability, to consider reasonable accommodations of the handicap/disabilities of Audubon tenants, to renew Atkinson's lease on the same terms and conditions as offered to those who are not handicapped, to reasonably accommodate Atkinson by taking measures consistent with the opinion of the hearing examiner, and to report within 30 days on its compliance with the order. Order of the Pennsylvania Human Relations Commission, August 28, 1990.

On appeal Lincoln presents two issues for our review. First, Lincoln contends that the Commission abused its discretion by finding Lincoln liable under Section 5(h)(1) and (3) of the Act, 43 P.S. § 955(h)(1) and (3), for failure to reasonably accommodate Atkinson's handicap. Secondly, Lincoln argues that the evidence adduced at the hearing does not support the conclusion that Lincoln failed to make reasonable accommodations for Atkinson, nor the conclusion that any further accommodations do not amount to undue hardship on Lincoln.

██ We may not disturb an order of the Commission unless its adjudication is in violation of constitutional rights, is not in accordance with the law or if necessary findings of fact are not supported by substantial evidence. *Civil Service Commission of City of Pittsburgh v. Commonwealth, Pennsylvania Human Relations Commission*, 124 Pa.Commonwealth Ct. 518, 556 A.2d 933 (1989).

Lincoln first contends that neither the Act nor the regulations of the Commission obligate providers of housing accommodations to accommodate tenants' handicaps. Lincoln concedes that Sections 5(h)(1) and (3) of the Act prohibit *discrimination* against the handicapped by providers of

housing accommodations.[4] However Lincoln argues that the Commission's order exceeds the scope of the Act by finding that Lincoln failed in its obligation to accommodate Atkinson. Lincoln argues that the Commission's findings concerning Lincoln's duty to accommodate amount to *ad hoc* legislating because regulations have not been promulgated concerning the particular duties of landlords to handicapped or disabled tenants. Lincoln accurately states, "[O]ne cannot find in Pennsylvania law a duty imposed upon providers of housing accommodations to accommodate the handicap(s) of its tenant(s)." Lincoln's Brief at 13.

Lincoln also correctly asserts that the Act does not make the failure to provide reasonable accommodations in housing an unlawful discriminatory practice. Although the Commission has adopted certain regulations which mention the subject of reasonable accommodations for the handicapped, these regulations pertain to employers and the owners and operators of public accommodations, rather than providers of housing. The general prohibition against discrimination states: "Handicapped or disabled persons may not be denied the opportunity to use, enjoy or benefit from *employment and public accommodations* subject to the coverage of the act, where the basis for such denial is the need [for] reasonable accommodations, unless the making of reasonable accommodations would impose an undue hardship." 16 Pa.Code § 44.5 (emphasis added). "Undue hardship" has been defined under the regulations,[5] and the

4. Section 5(h)(1) of the Act makes it an unlawful discriminatory practice to "refuse to sell, lease, finance or otherwise to deny or withhold any housing accommodation or commercial property from any person because of ... handicap or disability of any prospective owner, occupant or user of such housing accommodation or commercial property...." 43 P.S. § 955(h)(1). Section 5(h)(3) of the Act makes it an unlawful discriminatory practice to "discriminate against any person in terms or conditions of selling or leasing any housing accommodation or commercial property, or in furnishing facilities, services or privileges in connection with the ownership, occupancy or use of any housing accommodation or commercial property because of ... handicap or disability...." 43 P.S. § 955(h)(3).

5. 16 Pa.Code § 44.4 provides, in relevant part:

regulations specifically provide that owners, operators, or providers of public accommodations make reasonable accommodations to enable access for handicapped or disabled persons. 16 Pa.Code § 44.6(c). Reasonable accommodation by employers is also specifically required by regulations which require the modification of tools and equipment and job requirements. 16 Pa.Code §§ 44.13, 44.14.

■ We must agree with the Commission's conclusion, however, that before the hearing examiner Lincoln did not raise the issue of whether the Act obligates providers of housing to accommodate a tenants' handicap. It is the Commission's position that Lincoln is therefore barred from raising this issue before this Court by virtue of Pa.R.A.P. 1551.[6]

> Undue hardship—The factors to be considered in determining whether an undue hardship is imposed by the requirement that a reasonable accommodation be made to a person's handicap or disability include but are not limited to the following:
>
> (i) The overall size and nature of a business, organization, program, or public accommodation, including number of employes, structure and composition of workforce, and number and type of facilities. However, financial capability to make reasonable accommodations shall only be a factor when raised as part of an undue hardship defense.
>
> (ii) Good faith efforts previously made to accommodate similar handicaps or disabilities.
>
> (iii) The extent, nature and cost of the reasonable accommodations needed.
>
> (iv) The extent to which handicapped or disabled persons can reasonably be expected to need and desire to use, enjoy, or benefit from the employment or public accommodation which is the subject of the reasonable accommodation in question.
>
> (v) Legal or proprietary interest in the subject of proposed reasonable accommodations including authority to make such accommodations under the terms of any *bona fide* agreement, such as a lease, governing or describing rights and duties with respect to the subject.

6. R.A.P. 1551 provides, in pertinent part:
> Review of quasijudicial orders shall be heard on the record, and no question shall be considered by the court which was not raised before the government unit except:
>
> 1) questions involving the validity of a statute,
>
> 2) questions involving the jurisdiction of the government unit over the subject matter of the adjudication, and
>
> 3) questions which the court is satisfied that the petitioner could not by the exercise of due diligence have raised before the government unit.

The hearing examiner made it clear during Lincoln's cross-examination of Atkinson that the standard he intended to apply to determine whether there was a violation of the Act was that of "reasonable accommodation." [7] After Atkinson's counsel suggested that the question before the hearing examiner was whether there was a reasonable accommodation, Lincoln's counsel responded by stating that Atkinson's requests were "impossible" and an "undue hardship," at which time the hearing examiner stated that he would refer to the guidelines developed for reasonable accommodation in employment discrimination cases for guidance. N.T. 6/15/90 at 100.

Despite the fact that the hearing examiner twice enunciated the standards he intended to use, Lincoln did not object at the hearing or in its brief to the Commission. Rather, Lincoln's brief before the Commission acknowledged that a provider of public housing must make reasonable accommodations to a disabled or handicapped tenant if requested to do so, provided that the accommodations do not impose an undue hardship upon any owner, operator, or provider of a public accommodation, or the accommodations do not impose a demonstrable threat of harm to the health and safety of others, citing 16 Pa.Code § 44.21.[8] Lincoln also argued

7. Hearing Examiner to Norman Mittman, Esq., Counsel for Lincoln:
 MR. SUMMERSON: Let me state something about the legality of this issue. It's clear in the Commonwealth of Pennsylvania that a person providing housing has a responsibility to provide reasonable accommodations when requested. The nature and extent of those obviously differ with each and every circumstance....
 Notes of Testimony, June 15, 1990 (N.T. 6/15/90) at 42.

8. 16 Pa.Code § 44.21 provides:
 If a handicapped or disabled person, with reasonable accommodation, meets all the essential eligibility requirements for and is similarly situated with ablebodied persons in terms of need and desire to use, enjoy, or benefit from a public accommodation, then reasonable accommodations shall be made to assure the person opportunity substantially equivalent to that of able-bodied persons to use, enjoy, and benefit from the public accommodation in an integrated setting; provided that nothing in this section shall be construed so as to impose an undue hardship upon any owner, operator, or provider of a public accommodation, and provided further that nothing in this section shall be construed so as to

that it attempted to accommodate Atkinson within the parameters of the regulation but that Atkinson remained dissatisfied. While we do not suggest that use of a reasonable accommodation standard is correct in the context of assessing discrimination on the part of a housing provider, we will not consider an issue which has not been raised below.

Lincoln failed to preserve the issue of whether the hearing examiner's use of a reasonable accommodation standard is the applicable law for providers of housing by failing to voice this objection before the Commission. Although Lincoln argues in its reply brief that the Commission's conclusion that Lincoln violated the act is a "question of law," Lincoln presents no argument which would revive the issue under an exception to Pa.R.A.P. 1551. Lincoln clearly acquiesced in the application of the standard.

Lincoln alternately contends that the evidence is insufficient to support the conclusion that Atkinson was *not* reasonably accommodated by Lincoln. This Court must assume the task of attempting to review a determination of the Commission concerning reasonable accommodations in the absence of regulations concerning what the Commission considers to be a policy of reasonable accommodation.

Lincoln argues that the Act should be interpreted consistently with applicable federal law, which requires the landlord to permit reasonable modification of the existing premises occupied by a handicapped person, if the handicapped person is willing to bear the expense of the modification and the costs of restoration at the end of the tenancy. *See* Section 6(a) of the Fair Housing Amendments Act of 1988 (FHAA), 42 U.S.C. § 3604(f)(3), (Supp.1991). The HUD Equal Opportunity Guidelines, which implement Section 6(a) of the FHAA, provide that in the case of a rental a landlord may condition permission for a modification on the renter's agreement to restore the interior of the premises to the

impose a demonstrable and serious threat of harm to the handicapped or disabled person or a demonstrable threat of harm to the health and safety of others.

condition that existed before the modification, reasonable wear and tear excepted. 24 C.F.R. 100.203(a) (1991). The landlord may also condition permission for a modification on the renter's provision of a reasonable description of the proposed modifications, as well as reasonable assurances that the work will be done in a workmanlike manner. 24 C.F.R. 100.203(b) (1991).

We agree with Lincoln that guidance is to be derived from the federal law and regulations where they do not conflict with state law. The Commission has already provided that its regulations will be construed consistently with other relevant Federal and State laws and regulations except where such construction would operate in derogation of the purposes of the Act. 16 Pa.Code § 44.2(b).

■ We now turn to the question of whether Lincoln did fail to reasonably accommodate Atkinson in the manner contemplated by federal law, and if so, whether the Commission's remedial order was proper. We note that the Commission derives its authority to order that reasonable accommodations be made after a finding of discrimination from Section 9(f) of the Act:

> If, upon all the evidence at the hearing, the Commission shall find that a respondent has engaged in or is engaging in any unlawful discriminatory practice as defined in this act, the Commission shall state its findings of fact, and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful discriminatory practice and to take such affirmative action, including, but not limited to ... the making of reasonable accommodations ... as, in the judgement of the Commission, will effectuate the purposes of this act, and including a requirement for the report of the manner of compliance.

43 P.S. § 959(f). Further, when fashioning an award, the Commission has broad discretion and its actions are entitled to deference by a reviewing court. *Pennsylvania State Police v. Pennsylvania Human Relations Commission,* 512 Pa. 534, 538, 517 A.2d 1253, 1254 (1986). The Commis-

sion's order will not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than can be fairly said to effectuate the policies of the Act. *Id.*

The evidence adduced at the hearing reveals that Atkinson requested the following accommodations: that she be allowed to have her carpets removed, that she be allowed to install a washer and dryer in her apartment at her own cost and with the agreement that she would restore the premises at the end of her tenancy, that she be allowed to install an exhaust fan in the laundry room at her own cost, the premises to be restored at the end of her tenancy, and that Lincoln paint with products that she could tolerate, with the understanding that she would make up the difference in the cost of the paint. N.T. 6/14/90. Atkinson also requested notification of painting and pesticide application and that Lincoln attempt use of the least toxic methodology of pest control. Atkinson presented a letter from Lincoln's attorney permitting Atkinson to remove the carpets provided Atkinson set up an escrow account in the amount equal to 50% of the replacement cost to facilitate restoring the apartment to its original condition. Atkinson also testified that Lincoln gave her permission to install an exhaust fan in her kitchen provided she used an electrician of Lincoln's choice, however, she decided not to have the fan installed after discovering that Lincoln's electrician charged more than the electricians she contacted. N.T. 6/15/90 at 134. The testimony was contradictory on the point of whether Atkinson was notified of all painting and pesticide applications during her tenancy.

 Lincoln asserts that it did not renew Atkinson's lease because Lincoln felt that it was unable to accommodate her. N.T. 6/15/90 at 234–235. Norman Brodsky (Brodsky), President of Lincoln, testified that he considered Atkinson's letters requesting the use of least-toxic methods of pest control to be an attempt to "enter into the management realm of [the] complex." N.T. 6/15/90 at 238. Brodsky testified that he believed Atkinson was having a home

built, and he decided that he "wouldn't do anything" until she was gone. N.T. 6/15/90 at 243. Atkinson testified that Lincoln stopped treating for outdoor pests in the complex after she was harassed by one of the exterminators, but that this was not done at her request. N.T. 6/14/90 at 64. Despite Lincoln's assertion of sympathy, Lincoln's policy amounted to sitting back and doing nothing. This is not the equivalent of making a reasonable accommodation. Lincoln did not work with Atkinson in making the reasonable accommodations which she did propose, as contemplated by the federal regulations.

However, the Commission's order directs Lincoln to make accommodations beyond those requested by Atkinson, at Lincoln's cost. Although the Commission has broad discretion in fashioning an award, *Pennsylvania State Police v. Pennsylvania Human Relations Commission*, 512 Pa. 534, 517 A.2d 1253 (1986), and has the authority to order reasonable accommodations as set forth in Section 9(f) of the Act, 43 P.S. § 959(f), it is unreasonable to expect Lincoln to make accommodations which Atkinson did not formally and reasonably request. In this regard certain necessary findings are absent from the record and, as a result, portions of the Commission's order are unsupported.

■ Certainly the portions of the order which direct Lincoln to give Atkinson notice of pesticide application and painting, proposed accommodations (9) and (10), fall within the spirit of the federal guidelines. Similarly, it is clear that if the federal guidelines are to apply, they require Lincoln to permit Atkinson to make modifications to her apartment at her own expense. This would include the directives that Atkinson be permitted to install a kitchen ceiling fan and a washer and dryer in the apartment at her own expense, proposed accommodations (1) and (3), both of which modifications she previously requested.

■ Concerning proposed accommodations (2), dishwasher removal, (4), laundry room exhaust fan, (5), painting, (6), pest control, and (8), organic lawn care, we vacate these

portions of the Commission's order and remand for specific findings on whether Atkinson provided a reasonable description of these proposed modifications to Lincoln with any necessary assurances that modifications are to be made in a workmanlike manner, and whether Atkinson is willing to pay any increased costs resulting from these modifications, and if she is willing to restore the premises, reasonable wear and tear excepted.

As we have stated, 24 C.F.R. 100.203(a) permits the landlord to condition permission for a modification on a renter agreeing to restore the premises to the condition that existed before the modification, reasonable wear and tear excepted. The portion of the order dealing with carpet removal, proposed accommodation (7), is vacated and remanded for a determination of whether Lincoln's request that Atkinson escrow 50% of the replacement cost was actually for the restoration of the premises, taking reasonable wear and tear into account.

Finally, Lincoln contends that "attempting to keep Atkinson in a safe environment" has caused and will continue to cause undue hardship in the form of hazards to the other tenants and promote tenant unrest. Lincoln cites a letter received from a six-year tenant who declined to renew her lease because of insect infestation in her apartment. The record also reveals that this tenant's apartment was located in building J, which is unaffected by the order of the Commission. R.R. at 796a. Although tenants in Atkinson's building have expressed dissatisfaction with the presence of insects, N.T. 6/15/90 at 141, 152, 155, 167, and lack of painting, N.T. 6/15/90 at 148, 157, the hearing examiner properly found this dissatisfaction to be a result of Lincoln's refusal to utilize *any* painting, pest control or lawn care procedures in Atkinson's building, not as a result of the adoption of a policy of reasonable accommodation.

The order of the Commission is affirmed in part, vacated in part, and the matter remanded for disposition consistent with the foregoing opinion.

PALLADINO, J., dissents.

## ORDER

AND NOW, THIS 17TH DAY OF OCTOBER, 1991, the order of the Pennsylvania Human Relations Commission in the above-captioned matter is hereby affirmed as to proposed accommodations (1), (3), (9), and (10); vacated as proposed accommodation (7) and remanded for specific findings on the issue of reasonable wear and tear; vacated as to proposed accommodations (2), (4), (5), (6), and (8), and remanded for specific findings on whether Sally Atkinson provided a reasonable description of these proposed modifications to Lincoln Realty Management Company together with any necessary assurances that modifications were to be made in a workmanlike manner, and on Sally Atkinson's willingness to bear the cost for these modifications and whether she is willing to restore the premises, reasonable wear and tear excepted.

Jurisdiction relinquished.