634 A.2d 772

**John E. SHOEMAKER, Jr., Petitioner,**

**v.**

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 15, 1993.

Decided Nov. 24, 1993.

Reargument Denied Jan. 12, 1994.

also need to comply with any set-back requirements, yard regulations, etc.

John E. Shoemaker, Jr., for petitioner.

Francine Ostrovsky, Asst. Chief Counsel, for respondent.

Larry E. Coploff for intervenor, City of Lock Haven.

Before COLINS and PELLEGRINI, JJ., and KELTON, Senior Judge.

PELLEGRINI, Judge.

John E. Shoemaker petitions for review the order of the Pennsylvania Human Relations Commission (PHRC) dismissing his complaint against the City of Lock Haven Police Department (City) finding that he had failed to prove that his discharge was discriminatory.

Since 1968, Shoemaker was employed by the City as a police officer and had reached the rank of detective. The City police department consists of only 12 or 13 officers. On November 16, 1982, Shoemaker suffered symptoms of angina at work. He was diagnosed with Varian Prinzmetal's Angina of the

coronary artery by his treating physician, Dr. James Dolan. Shoemaker was temporarily hospitalized and did not return to work upon his release from the hospital. Upon releasing him for "work", Shoemaker's doctor recommended that he not perform functions that might involve confrontational situations because such stressful situations might precipitate a heart attack. In reviewing Shoemaker's job functions, Dr. Dolan indicated that he should not answer complaints, act as a traffic officer, serve warrants, participate in drug raids, run the speedchecker machine or pick up prisoners. Dr. Dolan also indicated that although he could do some of the other listed duties, he could only do them if he would not be confronting persons suspected of committing a crime. The doctor stated that the limitations were permanent.

In February of 1984, the City terminated Shoemaker because he could not perform the functions of a "police officer", including providing backup, under the limitations set by Dr. Dolan. Shoemaker requested that the City fashion a light-duty position for him within the police department taking into consideration the restrictions placed on his activity by his physician. Because the City did not provide light-duty work, Shoemaker filed a complaint with PHRC alleging that he had been discharged from his employment as a police officer due to his handicap, his heart condition. He sought to be reinstated, to receive back pay and to have his benefits restored.

After a hearing, the Hearing Commissioner for the PHRC recommended that the case be dismissed, finding that although Shoemaker had established a prima facie case, the City had proven that the dismissal was job-related because the handicap affected his job and no reasonable modification could be made to eliminate the threat of harm to himself and to the health and safety of others. The Hearing Commissioner found that all members of a police force as small as the City's must be "a generalist" in the performance of assigned duties and must provide backup to the other officers. He found that if Shoemaker returned to work, he would be involved in confrontational situations and that he could not follow his physician's advice and perform the basic functions of a police officer or provide backup to the other officers. The PHRC

adopted the opinion of the Hearing Commissioner and dismissed the complaint. Shoemaker then filed this appeal.[1]

Under Section 4(p. 1) of the Pennsylvania Human Relations Act (Act), Oct. 27, 1955, P.L. 744, *as amended,* 43 P.S. § 954 (p. 1), a handicap includes a physical impairment which substantially limits one or more of a person's major life activities. Section 5 of the Act, 43 P.S. § 955(a), prohibits an employer from discharging an employee because of a non job-related handicap.[2] The term "non job-related handicap" means:

> Any handicap or disability which does not substantially interfere with the ability to perform the *essential functions* of the employment which a handicapped person applies for, is engaged in or has been engaged in.

Section 4(p) of the Act, 43 P.S. § 954(p) (emphasis added). Under the definition of non job-related handicap in the PHRC regulations, a handicap is job-related if it presents a threat to the employee and the threat is of demonstrable and serious harm, or if there is a threat of harm to the health and safety of others. 16 Pa.Code § 44.4 The regulation also lists the factors to be considered in determining whether requiring the employer to make reasonable accommodations for the person's handicap would cause undue hardship, e.g., the overall size and nature of the organization, good-faith efforts previously made to accommodate similar handicaps, and the extent, nature and cost of reasonable accommodations. 16 Pa.Code § 44.4.

Shoemaker first contends that the decision was not in accordance with the Act because the Hearing Commissioner

1. Our scope of review is limited to determining whether the adjudication of the PHRC is in violation of constitutional rights, is not in accordance with the law, or the necessary findings of fact are not supported by substantial evidence. *Lincoln Realty v. Pennsylvania Human Relations Commission,* 143 Pa.Commonwealth Ct. 54, 598 A.2d 594 (1991).

2. Once the complainant establishes the prima facie case, which was not contested in this case, the burden shifts to the employer to prove that the employment action was taken for a nondiscriminatory or a job-related reason. *See Consolidated Rail Corp. v. Pennsylvania Human Relations Commission,* 136 Pa.Commonwealth Ct. 147, 582 A.2d 702 (1990).

did not consider whether he could perform the essential functions of a "light-duty" police job which he alleges he applied for after his termination.[3] Although Shoemaker claims that he "applied" for a light-duty position, the police department did not have any light-duty positions.[4] An application for a position presupposes that such a position exists. In actuality, Shoemaker was requesting that a new type of police officer position be created in light of his physical limitations, one that does not deal with anyone suspected of committing a crime. Although the City, like all employers, is required to make reasonable accommodations for Shoemaker who has a handicap, it is not required to create a new job with new job duties. *Magel v. Federal Reserve Bank of Philadelphia*, 776 F.Supp. 200, 204 (E.D.Pa., 1991).

■ For Shoemaker to prevail, he must be able to perform the essential functions of a police officer. Leonard Keller, an expert in police administration, was called by the City to describe the essential functions of a police officer and give his opinion as to whether Shoemaker could perform those functions. Although Mr. Keller focused on the small size of the police department in stating that the officers had to be "generalists", he testified that all police officers should be able to perform the basic duties of a patrol officer which require the arrest of suspects, pursuits, and response to accidents and complaints. Police officers are also required, he stated, to meet in-service training standards, including physical activity.

3. Shoemaker now alleges that he "applied" for a light-duty position, although this claim was not made in his complaint which claimed only that he had been discharged because of his handicap nor in his brief and arguments to the Hearing Commissioner. Because the issue of discharge and not an application for a job was presented to the PHRC, the Hearing Commissioner properly considered first whether the discharge was job-related, by considering the threat to others and himself, and then whether reasonable accommodations to allow him to continue in his job would cause undue hardship on the City.

4. Shoemaker also alleged that the City had allowed other police officers to do light-duty work. Evidence presented established that other officers did light-duty work on a temporary basis while recovering from physical injuries, but that Shoemaker's inability to perform his duties was permanent.

Mr. Keller concluded that under the recommendations of Dr. Dolan, Shoemaker could not perform the essential functions of a police officer.[5] From this testimony and the fact that the essential function of a police officer is to apprehend criminals, Shoemaker's physical limitations make it impossible for the City to make reasonable accommodations and Shoemaker still perform the essential functions of a police officer.

Shoemaker also contends that the Hearing Commissioner improperly allowed the City's expert, Mr. Keller, to give an opinion about his medical condition. · Based on a close reading of the testimony, Mr. Keller did not attempt to give an expert opinion about Shoemaker's medical opinion, instead, he was repeating his understanding of Dr. Dolan's medical opinion which was necessary for his expert opinion on whether Shoemaker could perform the job functions and whether modifications for the position were reasonable.[6] An expert witness is permitted to base his opinion testimony on facts or data which

5. These functions include those listed as the duties of his prior position, a detective, some of which were ruled out by Dr. Dolan; for example: follow up investigations, interview suspects, assist other departments on criminal cases, surveillance, act as a juvenile officer, execute search warrants and serve subpoenas.

6. Mr. Keller testified as follows:

Q. Are you familiar with the deposition of Doctor James J. Dolan which describe John Shoemaker's physical limitations?
A. Yes, there are two depositions that I reviewed.
Q. What is your understanding of John Shoemaker's physical limitations?

· · · · ·

A. That Mr. Shoemaker has a heart problem, a heart problem basically induced as a result of a work-related incident; and that Doctor Dolan's best diagnosis is that it does not get worse or hopes it does not get worse, but at the present time he does not see any signs of improvement in it. The condition from the time of the first deposition to the time of the second deposition, the condition has not changed.
Q. As a result of that condition, what do you understand to be Mr. Shoemaker's physical limitations?
A. That his capabilities to function as a police officer would be very, very limited and basically to in-house. In-house, I mean in-office functions.
Q. What is it that he must avoid? What's your understanding what he is to avoid according to his doctor?

are not within the expert's personal knowledge so long as the facts are supported by the evidence in the record; for example, testimony of other witnesses. *Hussey v. May Department Stores, Inc.*, 238 Pa.Superior Ct. 431, 357 A.2d 635 (1976). In giving his expert opinion concerning whether Shoemaker could perform the essential functions of a police officer, Mr. Keller was required to rely on the doctor's medical opinion. Restating his understanding of that opinion is a practical way to ascertain whether his opinion is based on facts in the record, assumed as true, or on a misconception of what was testified to by another witness.[7] The Hearing Commissioner did not err in allowing Mr. Keller to state his understanding of Shoemaker's physical condition based on the prior testimony of Dr. Dolan.[8] Because Shoemaker could not perform the essential functions of a police officer, the order of the PHRC is affirmed.

## ORDER

AND NOW, this 24th day of November, 1993, the order of the Pennsylvania Human Relations Commission, dated April 7, 1993, No. E–28351, is affirmed.

---

> A. He could not be involved in any type of situation which would increase the heart rate, increase the adrenaline flow which would put him in a situation where potentially he could have another coronary problem. These would be any type of situations where confrontation occurs....

(R.R. 277–278).

7. Shoemaker does not contend that Mr. Keller's testimony about his understanding of his medical condition was inaccurate, and in comparing his testimony with Dr. Dolan's testimony, we believe that his opinion was properly based on the testimony of Dr. Dolan concerning Shoemaker's medical condition and his limitations.

8. Shoemaker also contends that the Hearing Commissioner improperly relied on a management study done by Mr. Keller, though the study was not introduced into evidence. In examining the record, it appears that Shoemaker did not object when the study was mentioned more than once during Mr. Keller's testimony and, therefore, his objection is deemed waived. 16 Pa.Code § 42.102(c); *Lincoln Realty*.