KELLY, J.
(dissenting). While I agree with much of the majority’s analysis, I cannot join in its decision to uphold the trial court’s summary dismissal of this case. Instead, I would affirm the decision of the Court of Appeals, reverse the trial court’s ruling, and remand the matter for trial.
The issue is not whether defendant has the right to require all its officers to meet what it determines are essential functions of police work within the department. It is whether plaintiff presented a factual question about whether the requirements that defendant has designated as essential for its police officers are actually imposed on all officers.
THE APPROPRIATE STANDARD OF REVIEW
The appropriate standard of review for this case is recited in Maiden v Rozwood, 461 Mich 109, 120; 597 NW2d 817 (1999):
A motion under MCR 2.116(0(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(0(10), (G)(4). Quinto v Cross & Peters Co, 451 Mich 358; 547 NW2d 314 (1996).
*224 THE SIGNIFICANCE OF THE EEOC INTERPRETIVE GUIDELINES
The majority describes the statutory framework of the Americans With Disabilities Act (ADA), 42 USC 12101 et seq., and the Michigan Persons With Disabilities Civil Rights Act, MCL 37.1101 et seq. It disregards the Interpretive Guidelines promulgated by the Equal Employment Opportunity Commission (EEOC). These guidelines are valuable in clarifying that the “essential functions” of a police officer must be essential in reality, not just on paper:
The inquiry into whether a particular function is essential initially focuses on whether the employer actually requires employees in the position to perform the functions that the employer asserts are essential. For example, an employer may state that typing is an essential function of a position. If, in fact, the employer has never required any employee in that particular position to type, this will be evidence that typing is not actually an essential function of the position.
It is important to note that the inquiry into essential functions is not intended to second guess an employer’s business judgment with regard to production standards, whether qualitative or quantitative, nor to require employers to lower such standards. (See § 1630.10 Qualification Standards, Tests and Other Selection Criteria). If an employer requires its typists to be able to accurately type 75 words per minute, it will not be called upon to explain why an inaccurate work product, or a typing speed of 65 words per minute, would not be adequate. Similarly, if a hotel requires its service workers to thoroughly clean 16 rooms per day, it will not have to explain why it requires thorough cleaning, or why it chose a 16 room rather than a 10 room requirement. However, if an employer does require accurate 75 word per minute typing or the thorough cleaning of 16 rooms, it will have to show that it *225 actually imposes such requirements on its employees in fact, and not simply on paper. [29 CFK Pt 1630, App 1630.2(n) (emphasis added).]
The EEOC Interpretive Guidelines render the question of what comprises the essential functions of a job a factual matter. In addition, the language cited suggests that it is the employer who must show that the purported “essential functions” of a job are imposed uniformly.
THE APPROPRIATE BURDEN OF PROOF
With respect to which party bears the burden of proving the essential nature of the disputed “essential functions,” the majority finds persuasive the analysis of a federal district court. It disregards rulings by the United States Court of Appeals for the Sixth Circuit that the burden is on the employer. See Monette v Electronic Data Sys Corp, 90 F3d 1173, 1179-1180, 1184-1185 (CA 6, 1996), and Hamlin v Charter Twp of Flint, 165 F3d 426, 429-431 (CA 6, 1999). I find the Sixth Circuit analysis more soundly grounded in the EEOC’s Interpretive Guidelines and more compelling.
A CASE-BY-CASE ANALYSIS IS REQUIRED
In formulating its opinion, the majority considers the job requirements for a department’s police officers in general terms. The consideration should be focused, instead, case by case, on the essential functions of an officer in the plaintiffs position. Other courts reviewing ADA claims against law enforcement agencies have taken the latter approach.
*226 For example, in Champ v Baltimore Co,[1] the plaintiff did not prevail because the defendant showed that he could not perform essential duties that actually were required of all officers. Plaintiff had lost the complete use of one arm and could not drive a vehicle under emergency conditions or effectuate a forcible arrest. He was not proficient with a firearm. The department provided evidence that all officers were subject to reassignment at any time and that nonpatrol officers actually were reassigned to patrol in emergencies.
Similarly, in Shoemaker v Pennsylvania Human Relations Comm [2] the court considered the small size of the police department and the actual duties of its officers in determining that all officers were required to perform patrol work. The plaintiff could not do that work.
In Dorris v Kentwood,[3] a Michigan federal district court refused to grant summary disposition in favor of the defendant police department. There, the officer offered evidence that his position as an in-school instructor did not require the strenuous physical exertion demanded of a patrol officer. In each of the cases, the department was obligated to come forward with evidence that in practice all of its officers were required to perform the activities that it demanded of the plaintiff.
The proper factual analysis is set forth at 29 CFR pt 1630.2(n). The trial court in this case failed to engage in that analysis. Rather, it decided that public policy considerations required that defendant be insulated from judicial review of the “essential functions” that it had established for its officers. It ignored that plaintiff *227 has raised a question of fact regarding whether those functions were uniformly applied to all officers.
THE ESSENTIAL FUNCTIONS MAY NOT HAVE BEEN UNIFORMLY APPLIED IN PRACTICE
In this case, for ten years after plaintiffs physician placed him on restrictive duty status, he worked for defendant, a large, urban police department that was divided into many subdivisions. Eventually, he successfully bid for both A-clerk and Crime Analysis Unit (CAU) positions. He won these positions without regard to his medical condition. Neither required the physical capabilities of a patrol officer. After plaintiff had served three years in the CAU, defendant forced him into involuntary disability retirement.
Defendant asserts that plaintiff was unable to perform the essential functions of his job. As evidence of its definition of essential functions, defendant relies on a Michigan Law Enforcement Officer Training Commission list that it had adopted. See ante at 198-199. However, plaintiff provided testimony that full-duty officers were not routinely evaluated to determine whether they could perform all the tasks on the list. Further evidence demonstrated that defendant continued to employ others, including a wheelchair-bound officer, who also could not perform all the tasks on the essential functions list.
There is precedent for adopting plaintiffs position that, to establish grounds for dismissal, essential functions must be uniformly applied in practice to all. The court in the case of Simon v St Louis Co, Mo,[4] faced a situation similar to the instant one. After the plaintiffs dismissal, other disabled officers remained at work as *228 commissioned police officers. The United States Court of Appeals for the Eighth Circuit remanded the case to the district court with the following order:
On remand, the district court should consider whether the requirements for police officers of St. Louis County, as testified to at trial by Colonel Kleinknecht, are reasonable, legitimate, and necessary requirements for all positions within the department. The district court should determine whether the ability to make a forceful arrest and the ability to perform all of the duties of all of the positions within the department are in fact uniformly required of all officers. If not uniformly required, they should not be considered actual requirements for all positions. [Id. at 321.]
In Simon, the plaintiff police officer presented evidence that the defendant police department’s physical requirements for officers were not actually applied to all officers. This case is similar to Simon in that Officer Peden presented evidence that the department’s essential functions were not, in fact, required of all but were selectively required.
Contrary to the majority’s characterization, I do not imply that every officer must spend the same percentage of time on every task on the essential functions list. Rather, if all the tasks are applicable to all the officers, as the police department asserts, then all tasks must actually be considered when assessing the ability of any officer. If one officer is subject to forced disability retirement because he cannot perform an essential function, then all officers who cannot perform that function should be forced to retire.
The difficulty that plaintiff raises here is that, although the department asserts that all officers must satisfy all tasks on the list, that assertion may not be true in practice. In accordance with the EEOC Interpretive Guidelines, we should not defer to an essential *229 function if it is essential only on paper. Given that plaintiff has offered evidence that officers who cannot perform the essential functions are still employed by the department, summary disposition should not have been granted.
CONCLUSION
I agree with the majority that the courts should give deference to the descriptions given by police departments of the essential functions of their officers’ jobs. However, I do not believe that the deference should be absolute.
To constitute a basis for dismissal, the essential functions must be uniformly applied to all police officers. The burden is on the department, if challenged, to make this showing. In this case, plaintiff raises the issue whether defendant viewed the tasks on its essential functions list as applicable to all positions within the police department and uniformly required them.
Consequently, summary dismissal of plaintiffs claim was not appropriate. While it is unknown whether plaintiff would prevail at trial, he has provided enough evidence to escape summary disposition. I would affirm the decision of the Court of Appeals and remand the case for trial.
CAVANAGH and WEAVER, JJ., concurred with KELLY, J.

 884 F Supp 991 (D Md, 1995).

 160 Pa Cmwlth 216; 634 A2d 772 (1993).

 1994 US Dist LEXIS 15640; 1994 WL 762219, 4 Am Disabilities Cas (BNA) 741 (WD Mich, 1994).

 656 F2d 316, 320 (CA 8, 1981).