582 A.2d 702

**CONSOLIDATED RAIL CORPORATION, Petitioner,**

**v.**

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1990.

Decided Nov. 13, 1990.

148

150

Vincent Candiello, with him, Audrey F. Miner, Morgan, Lewis & Bockius, Harrisburg, and Dennis J. Morikawa, Philadelphia, for petitioner.

Francine Ostrovsky, Assistant Chief Counsel, with her, Elisabeth S. Shuster, Chief Counsel, Harrisburg, for respondent.

Before COLINS and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

This is an appeal by the Consolidated Rail Corp. (Conrail) from an order of the Pennsylvania Human Relations Commission (Commission) which found that Conrail had discriminated against Robert P. Drumheiser (Complainant) on the basis of his age, in violation of Section 5(a) of the Pennsyl-

vania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955(a). Mr. Drumheiser's discrimination complaint is based on his assertion that because of his age, Conrail refused to grant him a leniency reinstatement following his discharge from service for disciplinary reasons. We affirm.

Mr. Drumheiser's complaint was originally heard by Michael M. Smith, a permanent hearing examiner for the Commission, on November 15 and 16, 1988. Mr. Smith issued his Findings of Fact, Conclusions of Law, and Opinion and Recommendation on January 12, 1990, in which he found in favor of Mr. Drumheiser. The Commission adopted the permanent hearing examiner's findings and recommendation in its final order dated February 1, 1990.

The dispute between these parties began on September 14, 1983, when Mr. Drumheiser, along with two other Conrail employees, T.W. Zimmerman and F.E. Trout, were discharged from employment after the train which they were operating failed to stop at a Temporary Block Station.[1] At the time of this incident, Mr. Zimmerman was the conductor of the train and was ultimately responsible for the train's operation; Mr. Drumheiser was the engineer aboard the train and had actual control of the train; Mr. Trout was the Trainman. After an investigation into the incident, Conrail determined that the crew members had failed to collect the most recent company bulletins, and to familiarize themselves with those bulletins, as it was their duty to do. Because the crew members had failed to apprise themselves of the latest bulletins, they were unaware that a Temporary Block Station had been erected at a particular point on the railroad, and consequently, were unaware that they were obliged to stop at that point.

After the train passed through the Temporary Block Station, Conrail discovered this fact and radioed the train to stop. Mr. Drumheiser refused to stop the train because the

1. A Block Station is defined by the Transportation Department Rules as "a place provided for the control of trains by block signals or other means." See Respondent's Exhibit 14, page 9.

individual on the radio failed to identify himself. Mr. Drumheiser demanded identification from the radio correspondent, and when he finally received a name with which he was familiar, he brought the train to a stop. Conrail also determined that the train had exceeded its maximum authorized speed.

All three of the crew members were removed from service as a result of the incidents on September 14, 1983. Two crew members, T.W. Zimmerman, who was then 56 years old, and F.E. Trout, then 53 years old, were granted leniency and reinstated to their positions. Mr. Drumheiser, who was nearly 61 years old on the date of the incident, was refused leniency and was not reinstated.

Mr. Drumheiser argues that he was denied reinstatement because he was over 60 years old and was eligible for retirement, while the other two crew members, who were younger and were not eligible for retirement, were reinstated.[2] The Commission found that Conrail had discriminated against Mr. Drumheiser and ordered it to pay him regular wages of $38,233.17; vacation salary of $700.60; and regular retirement employer contributions of $5,555.35; for a total of $44,489.12. The Commission also ordered Conrail to issue Drumheiser 26.684948 shares of its stock as lost stock benefits. Further, the Commission ordered Conrail to cease and desist discriminating against its employees based on age.

In reviewing the Commission's decision, our scope of review is limited to a determination of whether there was a violation of constitutional rights, an error of law, or whether the findings of fact necessary to support the adjudication are supported by substantial evidence. *Pennsylvania State Police v. Pennsylvania Human Relations Commission*, 127 Pa.Commonwealth Ct. 436, 561 A.2d 1320 (1989).

2. Drumheiser was reinstated to his position as engineer with Conrail, without pay for time lost, pursuant to an award of a Special Board of Adjustment dated October 16, 1984, and he later exercised his option to transfer to Amtrak. Consequently, Mr. Drumheiser does not seek reinstatement in this action.

In this case Conrail raises five issues: 1) that the Commission erred as a matter of law by placing the burden of proof on the employer; 2) that there is insubstantial evidence of discrimination; 3) that the Commission erred in failing to reduce the damages because of Mr. Drumheiser's failure to mitigate his losses; 4) that the Commission erred as a matter of law in ordering Conrail to pay pension benefits directly to complainant; and 5) that there is insubstantial evidence to award pension contributions.

 It is well settled in Pennsylvania that cases arising under Section 5(a) of the Act be considered in accordance with the analytical framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and adopted by the Pennsylvania Supreme Court in *General Electric Corp. v. Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976). Under that analytical model, the burden is initially on the plaintiff to prove a *prima facie* case, which if proved, raises a presumption of discrimination. The *prima facie* case is established by showing:

(i) that [the plaintiff] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of [the plaintiff's] qualifications. ... This standard is, to be sure, adaptable to accommodate differences in the nature of the discrimination alleged (e.g., sex rather than race) and in the action alleged to be improper (e.g., discharge rather than refusal to hire). The form it takes, however, must be appropriate to its function, which is to 'eliminate the most common nondiscriminatory reasons for the employee's action.'

*Allegheny Housing Rehabilitation Corp. v. Pennsylvania Human Relations Commission*, 516 Pa. 124, 129, 532 A.2d 315, 318 (1987) (citations omitted).

Establishing the *prima facie* case gives rise to a presumption, but it is only a presumption, that discrimination was the basis for the employer's action. Our review of the record satisfies us that Mr. Drumheiser established all of the elements to make out a *prima facie* case. First, he established that he was 61 years old at the time of the incident and therefore was in the class protected by the Act. Section 4 of the Act, 43 P.S. § 954(h). Second, the adverse action by the employer was his denial of a leniency reinstatement. Third, Mr. Drumheiser was clearly qualified as an engineer since he was performing those duties for many years. Fourth, Conrail had a continuing need for the services of engineers.

After Mr. Drumheiser established a *prima facie* case, the burden shifted to Conrail to demonstrate that its reasons for denying Mr. Drumheiser leniency reinstatement were based on legitimate nondiscriminatory reasons. *Allegheny Housing*, 516 Pa. at 131, 532 A.2d at 319. Conrail offered testimony and other evidence that its reasons were based on, 1) the seriousness of the offense which led to Mr. Drumheiser's discharge; 2) Mr. Drumheiser's attitude in the incident; and 3) Mr. Drumheiser's disciplinary record over the years, which it deemed to be unsatisfactory.

The evidence presented by Conrail is sufficient to erase the presumption of discrimination arising from Drumheiser's *prima facie* case. This evidence, if believed, would have proven legitimate, nondiscriminatory reasons for the action taken by Conrail. The Commission correctly determined that the employer had removed the presumption of discrimination from the case, and that the Commission was now obliged to weigh all the evidence to determine whether or not Mr. Drumheiser had proven discrimination by preponderance of the evidence.

The Commission was not, however, obliged to accept Conrail's evidence as true any more than it was obliged to accept Drumheiser's evidence. As the Pennsylvania Supreme Court has noted:

It was never intended, however, that the previously described analytical method would immunize members of 'protected classes' from adverse employment decisions simply by dint of their class membership. Nothing about the Human Relations Act removes its operation from the bedrock concept of our jurisprudence that one who alleges wrongdoing must supply the proof. The stated analysis is no more than an aid to evaluating the proof. If the plaintiff produces sufficient evidence that, if believed and otherwise unexplained, indicates that more likely than not discrimination has occurred, the defendant must be heard in response. Absent a response, the 'presumption' of discrimination arising from the plaintiff's *prima facie* case stands determinative of the factual issue of the case. In other words, if the employer rests without producing evidence, the plaintiff must prevail if he or she has produced sufficient evidence to make out a *prima facie* case. If, however, the defendant offers a non-discriminatory explanation for the dismissal, the presumption drops from the case. As in any other civil litigation, the issue is joined, and the entire body of evidence produced by each side stands before the tribunal to be evaluated according to the preponderance standard: Has the plaintiff proven discrimination by a preponderance of the evidence? Stated otherwise, once the defendant offers evidence from which the trier of fact could rationally conclude that the decision was not discriminatorily motivated, the trier of fact must then 'decide which party's explanation of the employer's motivation it believes.'

*Id.*, 516 Pa. at 131, 532 A.2d at 319.

It is clear from a reading of the Commission's opinion that the hearing examiner did not believe Conrail's reasons, finding that they were a mere pretext disguising the Employer's discriminatory actions. The Commission, as the trier of fact, was free to reject any evidence which it believed was fallacious, and it is not an error of law, nor a misapplication of the *McDonnell Douglas* analytical framework for it to do so.

■ We next consider Conrail's argument that there is not substantial evidence to support the Commission's decision that the action taken by Conrail in this case was discriminatory. We find, however, that this objection is without merit, since there is a great deal of evidence in the record to support the Commission's findings.

Mr. Drumheiser offered evidence that the other two crew members who were dismissed with him following the incident which led to his dismissal were reinstated. He argues that the only distinguishing factor between himself and those two individuals was that he was over 60 years old and eligible for retirement, and that they were not. This fact seriously undermines Conrail's stated reason for denying Drumheiser reinstatement because of the seriousness of the offense, since the other employees involved in the same offense were reinstated.

The employer attempted to distinguish Mr. Drumheiser from the other crew members by stating that he was more responsible for the incident. Drumheiser rebutted this testimony by demonstrating that railroad regulations provide that the conductor of the train, Zimmerman, was ultimately responsible for the operation of the train, and was in fact physically capable of bringing the train to a stop. Drumheiser also offered the testimony of Maurice Logan, who was a man with considerable experience in railroad operation and discipline. Mr. Logan testified that all of the employees were equally responsible in failing to stop at the Temporary Block Station, and that the discipline meted out to Mr. Drumheiser was more severe than the offense warranted. Finally, Mr. Drumheiser offered a Conrail memorandum dated November 29, 1983, from F.K. Schwab, Senior Director of Labor Relations for Conrail, who recommended that Mr. Drumheiser be restored to service on a leniency basis.

Since Conrail's own Senior Director of Labor Relations recommended reinstatement, the expert testimony of Mr. Logan recommended reinstatement, coupled with the fact

that the other two employees involved in the incident were reinstated, there was ample evidence for the Commission to find that the employer's reliance on the seriousness of the offense as a reason for refusing to reinstate Mr. Drumheiser was not sincere.

Conrail also argued that Drumheiser's poor disciplinary record was reason to refuse him reinstatement. The Commission refused to accept this argument also because the disciplinary record of Mr. Trout was virtually indistinguishable from that of Drumheiser. Mr. Drumheiser also offered evidence of other younger employees with more serious disciplinary records who were still employed by Conrail. This evidence, particularly the evidence regarding Trout, since he was involved in the same incident, supports the conclusion that the disciplinary record was not the basis for Conrail's decision.

The final rationale put forward by the employer, is that Mr. Drumheiser's attitude in the incident on September 14, 1983, distinguished him from the other two crew members. This argument is also uncompelling. Conrail attempted to prove a bad attitude by showing that the Complainant refused to obey the radio order to bring the train to a stop after he passed the Temporary Block Station. Mr. Drumheiser, however, rebutted these allegations by demonstrating that under railroad regulations he was not obliged to obey any order which was radioed to him unless the correspondent identified himself. He also testified that once the radio caller identified himself, he stopped the train at the nearest place where it could be easily accessed. The Commission accepted this testimony as true, and it is not for us to reverse that finding.

Our review of the record satisfies us that there is a plethora of evidence which supports the findings of the Commission. Consequently, we reject Conrail's argument that there is insubstantial evidence of discriminatory action.

Conrail next argues that it was legal error for the Commission to refuse to reduce the award of backpay because Mr. Drumheiser failed to find other employment, or to otherwise mitigate his losses by applying for retirement. The Commission did acknowledge that Mr. Drumheiser admitted that he failed to seek other employment. Nevertheless, because of Mr. Drumheiser's age and substantial railroad experience, the Commission concluded that it was not unreasonable for Mr. Drumheiser to pursue reinstatement to the railroad as the best means to mitigate his damages. The Commission therefore did not reduce the award of backpay for a failure to mitigate.

■ At the outset, we note that the legislature has given the Commission broad remedial powers to cope with the problem of discrimination. *Pennsylvania Human Relations Commission v. Alto–Reste Park Cemetery Association*, 453 Pa. 124, 306 A.2d 881 (1973). That power, once exercised, is given great deference by the courts as the Supreme Court dictated in *Alto–Reste.*

We thus recognize that the expertise of the Commission in fashioning remedies is not to be lightly regarded. We agree completely with, and adopt as our standard of review here, the United States Supreme Court's statement in *Fibreboard Paper Products Corp v. N.L.R.B.* et al., 379 U.S. 203, 216, 85 S.Ct. 398, 406–407, 13 L.Ed.2d 233 (1964) (dealing with a provision (10c) of the Taft–Hartley Act virtually identical to, in phraseology, the statutory provision (re P.S. § 959, supra) here involved:

That section [10c] "charges the Board with the task of devising remedies to effectuate the policies of the Act." ... The Board's power is a broad discretionary one, subject to limited judicial review. "The relation of remedy to policy is peculiarly a matter for administrative competence" ... "In fashioning remedies to undo the effects of violation of the Act, the Board must draw on elightenment gained from experience." ... The Board's order will not be disturbed "unless it can be

shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." ... (citations omitted).

*Id.,* 453 Pa. at 134, 306 A.2d at 887 (emphasis deleted).

 This Court has recognized that the award of backpay serves not only the purpose of restoring the injured party to his pre-injury status and making him whole, but also serves to discourage future discrimination. *Williamsburg Community School District v. Pennsylvania Human Relations Commission,* 99 Pa.Commonwealth Ct. 206, 512 A.2d 1339 (1986). Under the *Alto–Reste* rule, we may only upset the Commission's award if we find that it is an attempt to achieve ends other than the stated purposes of the Act. Clearly an award of backpay serves the Act's purpose. *Id.*

 The question of mitigation of damages is a matter which lies within the sound discretion of the Commission. *Albert Einstein Medical Center v. Pennsylvania Human Relations Commission,* 87 Pa.Commonwealth Ct. 145, 486 A.2d 575 (1985).[3] We fashioned this rule because we believed that the Commission's expertise in determining the appropriate remedy in discrimination cases was superior to our own. *Id.* Our Supreme Court explained in *Alto–Reste:*

The words 'as in the judgment of the Commission' indicate to us that the Legislature recognized that only an administrative agency with broad remedial powers, exercising particular expertise, could cope effectively with the pervasive problem of unlawful discrimination. Accordingly, the Legislature vested in the Commission, quite

3. Cases cited by Respondent dealing with mitigation in cases outside the Human Relations Act are inapposite. In *Alto–Reste,* the Pennsylvania Supreme Court granted broad discretion to the Commission when fashioning an award under the Act, and in *Albert Einstein,* we held that that discretion extended to the question of the duty to mitigate as well.

properly, maximum flexibility to remedy and hopefully eradicate the 'evils' of discrimination.

*Id.,* 453 Pa. at 133–34, 306 A.2d at 887.

 In *Albert Einstein,* the Commission reduced the backpay award by one-half because it felt that the complainant did not make a full faith attempt at finding other employment. In the present case, the Commission considered Mr. Drumheiser's failure to seek other employment, but found that because of his age, long experience with the railroad, and his successful efforts before the Special Board of Adjustment, it was reasonable for him to seek reinstatement to his position, rather than other employment, to mitigate damages.

Contrary to Conrail's assertions, the Commission did not fashion a hard and fast rule that employees alleging age discrimination are not obliged to mitigate their damages. Rather the Commission determined that the facts of this particular case did not make it unreasonable for this particular employee to seek reinstatement rather than other employment.

 The Commission considered Complainant's age, his many years with the railroad, and the fact that his expertise was unique to the railroad and would not be easily transferrable. Considering these facts, the Commission concluded that Mr. Drumheiser's best hope for re-employment was in being reinstated. Conrail argues that there is no evidence in the record regarding the last element in the Commission's consideration, but we believe that it was not error for the Commission to rely on its knowledge of the uniqueness of the railroading industry and the skills necessary for operation of a train. *See* 1 Pa.Code § 35.173. We cannot say in this case that the Commission abused its discretion in fashioning the backpay award for Mr. Drumheiser.

Conrail raised the issue of Mr. Drumheiser's failure to seek other employment, or to file for pension benefits in an attempt to mitigate his damages before the Commission,

and the Commission considered the issue. The Commission's conclusion that Mr. Drumheiser reasonably sought reinstatement to his Conrail position, rather than other employment, was a valid exercise of its discretion. *Albert Einstein.* Given the deference which the Pennsylvania Supreme Court has directed us to afford the Commission in the exercise of its broad authority to fashion a remedy when it finds there has been discrimination, we must hold that the Commission's backpay award is proper.

 Conrail's contention that the Commission committed an error of law by ordering the payment of regular pension contributions to Mr. Drumheiser is without merit. Conrail contends that it will be obliged to make payment to the pension fund as well as to Mr. Drumheiser directly as a result of this order. Nowhere in the Railroad Retirement Act of 1974, 45 U.S.C. §§ 231–231t, nor in the corresponding regulations, 20 C.F.R. §§ 211.1–211.14 (1987), can we find where damages awarded for violation of a state statute constitute creditable railroad compensation. Conrail dissolved the relationship of employer and employee at the time it discharged Mr. Drumheiser. Although the Court found that Conrail's failure to reinstate Mr. Drumheiser was in violation of the state statute, the award of damages for this violation does not fall within the statutory or regulatory provision covering railroad retirement contribution.

 Finally, the contention that there is insubstantial evidence in the record to support the award of damages for lost pension contributions is without merit. Mr. Drumheiser offered evidence of similarly situated Conrail employees whose salaries were approximately the same as his, along with those employees' corresponding pension contributions. Since the salaries were comparable, and since the pension contributions are a function of salaries, it is reasonable to equate the pension contributions of the similarly situated employees to those which Mr. Drumheiser lost. Therefore, we endorse the Commission's calculation of pension contributions based on evidence of comparable salaries.

In conclusion, having determined that the Commission committed no legal errors, and that the record demonstrates there is substantial evidence to support the conclusions of the Commission, we affirm the Commission's order.

## ORDER

AND NOW, this 13th day of November, 1990, the order of the Pennsylvania Human Relations Commission in the above-captioned matter is hereby affirmed.

PELLEGRINI, J., concurs in the result only.