**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, LOCAL 261, Petitioner,**

v.

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 7, 1997.

Decided May 1, 1997.

double charge.

Robert D. Mariani, Scranton, for petitioner.

Joseph T. Bednarik, Harrisburg, for respondent.

Before McGINLEY and PELLEGRINI, JJ., and MIRARCHI, Senior Judge.

PELLEGRINI, Judge.

United Brotherhood of Carpenters and Joiners of America, Local 261 (Union) appeals from an order of the Pennsylvania Human Relations Commission (PHRC) awarding Joseph Ponas (Ponas) damages for age discrimination in violation of Section 5(c) of the Pennsylvania Human Relations Act (Act).[1]

The Union operates for its members a non-exclusive hiring hall.[2] Ponas, who was born in 1921, alleged in his age discrimination complaint[3] to the PHRC that he went to the hiring hall on May 12, 1992, and told Mr. Schimelfenig (Business Agent), the Union's business agent, that he wanted work. On May 14, 1992, Ponas wrote to the Union's international office complaining that he had been out of work for two years because the Union would not call him for a job, and was told in response that he would not be put to work until other members running out of unemployment and health benefits were first placed in employment. Ponas asserted that this constituted discrimination on the basis of his age.

On February 9, 1993, the PHRC notified the Union that probable cause existed to credit Ponas' complaint, and the PHRC later notified the Union that a hearing on the matter would be held. In response, the Union filed a motion for judgment on the pleadings, asserting that Ponas' complaint was barred by laches. Because of the lengthy delay between the time of the initial complaint and Ponas' death in 1994, before the hearing on the complaint, the Union contended it was prejudiced. That motion was denied.

At the hearing, the parties first stipulated that Ponas was offered and refused a referral on August 9, 1992. The Business Agent then testified that Ponas only asked him for "extra work" and that he wrote his name in the upper right hand corner of the paper on which he listed the members requesting work. The Business Agent testified that he normally kept the list of members requesting work on a piece of paper with their names listed in the order that they requested work, and that all members were given jobs on the basis of who had been out of work the longest, although he testified that he did not retain the list for the time period relevant to this matter.

Ponas also introduced into evidence a number of documents, including a letter dated August 6, 1992, that he received from the Union's international office in response to his

---

1. Section 5(c) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955(c), provides:
   It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation ...:

   .   .   .   .   .

   For any labor organization because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability ... of any individual to deny full and equal membership rights to any individual or otherwise to discriminate against such individuals with respect to hire, tenure, terms, conditions or privileges of employment or any other matter, directly or indirectly, related to employment.

2. A "non-exclusive hiring hall" is one in which the members are free to seek work outside the hiring hall process.

3. Ponas filed his complaint with the PHRC on September 1, 1992, and amended it several times during 1993 and 1994, with the third amended complaint substituting his estate because he died on April 26, 1994.

complaint to the international office. Attached to that correspondence was a letter from the Business Agent to the Union's international office dated August 4, 1992, in which the Business Agent stated that Ponas would be put to work after the members whose unemployment and health insurance benefits were running out. This letter also mentioned that Ponas was receiving social security and an annuity.

In its defense, the Union offered the testimony of several Union members who testified that they were out of work before Ponas asked to be put to work and did not receive referrals until July, August and, in one case, September. The Union also presented the testimony of the manager of its Health and Welfare Fund, who testified that his records reflected that there were Union members who were out of work before Ponas who were still out of work at the time Ponas asked for a referral, and that those members did not return to work until July of 1992 or later.

█ The PHRC found that the referral system was not run on first-in first-out basis, and concluded that the Business Agent operated the hiring hall in an arbitrary manner. The PHRC concluded that Ponas was discriminated against on the basis of age in violation of Section 5(c) of the Act. That conclusion was based on the Business Agent's admission that Ponas' name was not placed in sequence on the out-of-work list, as well as his letter to the international office of the Union that he was first trying to put to work those members that were running out of unemployment and health benefits, men-

tioning that Ponas was collecting an annuity and social security. Additionally, the PHRC found that the Business Agent had falsified some documents.[4] Based on the above, the PHRC determined that Ponas had been discriminated against on the basis of age. The PHRC calculated that there were 62 work days from May 12, 1992, the date that Ponas asserted he requested work and August 9, 1992, the date that the parties stipulated that Ponas was offered and refused work, and awarded benefits for each work day during that time period. This appeal followed.[5]

## I.

The Union first contends that the PHRC erred in not dismissing Ponas' complaint on the basis of a defense of laches. The Union argues that the lapse of time between the filing of the complaint and the hearing was Ponas' fault, and that when Ponas died before the hearing, the Union was prejudiced.

█ The purpose of the doctrine of laches is to bar relief when the complaining party has not been diligent in instituting his or her action to the prejudice of another. *Beaver Cemetery v. Pennsylvania Human Relations Commission,* 107 Pa.Cmwlth. 190, 528 A.2d 282 (1987), *petition for allowance of appeal denied,* 518 Pa. 627, 541 A.2d 1138 (1988). "The party asserting laches must establish that it was prejudiced by a period of inordinate delay by the other party," *Farrell Area School District v. Deiger,* 88 Pa.Cmwlth. 431, 490 A.2d 474, 477 (1985), and where the delay is not due to the complainant but instead the PHRC, the doctrine of laches will not be

4. Specifically, the PHRC found that the Business Agent had falsified a document which purportedly listed the members who had refused a referral for work on the basis that while the list showed that Ponas requested a referral on July 5, 1992, the entry concerning Ponas was not in chronological order, as were the other entries on the list, and the July 5, 1992 request was contrary to the sworn testimony of the Business Agent who testified that Ponas requested work in May of 1992. The PHRC also found that the entry on a list showing that Ponas refused a referral on July 9, 1992, was also false because the Business Agent admitted in his testimony that Ponas did not refuse a referral on that date.

5. Our scope of review in decisions from the Pennsylvania Human Relations Commission is limited to determining whether the Commission violated constitutional rights, made findings of fact not supported by substantial evidence or committed an error of law. *George Clay Steam Fire Engine and Hose Company v. Pennsylvania Human Relations Commission,* 162 Pa.Cmwlth. 468, 639 A.2d 893 (1994), *petition for allowance of appeal denied,* 540 Pa. 614, 656 A.2d 120 (1995).

applied. *Pittsburgh Board of Education v. Pennsylvania Human Relations Commission*, 128 Pa.Cmwlth. 324, 563 A.2d 581 (1989). Moreover, the question of laches is a factual one and is determined by examining the circumstances of each case. *Farrell*, 490 A.2d at 477.

Here, the PHRC denied the Union's motion for judgment on the pleadings based on laches because it found that there was no undue delay, reasonable or unreasonable, attributable to either Ponas or the PHRC. The record reveals that Ponas alleges that the act of discrimination took place on May 12, 1992, and he filed his complaint on September 1, 1992, well within the 180 day limitation period established by the Act.[6] Ponas then amended his complaint on December 19, 1992, and again on February 5, 1993. The PHRC issued a finding of probable cause on February 9, 1993, and a conciliation conference, which ultimately proved unsuccessful, was held on March 11, 1993. There then was a period of inactivity for approximately 16 months until the PHRC met on June 27, 1994, and decided to place the matter on the public hearing docket, which was held on July 26, 1995.

■ There is nothing in the record that shows that Ponas was not diligent in filing his complaint and pursuing it through the conciliation conference. The delay occurred after the conciliation conference, and the Union offers nothing to show that this delay was due to inactivity on the part of Ponas. Consequently, the Union has not established that it was prejudiced by an inordinate delay on the part of Ponas, and the PHRC properly denied his motion for judgment on the pleadings.[7]

**II.**

The Union contends that as a matter of law, Ponas has not proven that he was discriminated on the basis of age because he did not show by a preponderance of the evidence that the Union engaged in age discrimination, and that its reasons for refusing to place Ponas were pretextual. Specifically, the Union argues that because Ponas failed to prove that he did not receive a work referral sooner than he did because of his age, he has not established a prima facie case of discrimination. Moreover, the Union argues that he has failed to prove that the Union's actions were actually motivated by his age.

■ In *General Electric Corporation v. Commonwealth, Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976), our Supreme Court adopted as the standard for setting forth a prima facie case of discrimination under the Act the federal standard for proving discrimination under Title VII of the Civil Rights Act,[8] holding that in order to make out a prima facie case, the complainant must establish that he is a member of a protected class, that he applied for a job which he was qualified, that his application was rejected and that the employer continued to seek other applicants of equal qualification. Once a complainant has established a prima facie case, the burden shifts to the employer to produce evidence of a legitimate non-discriminatory reason for its actions, and, if such evidence is presented, then in order to prevail, the complainant must prove by a preponderance of the evidence that the proffered reasons were pretextual and that the complainant was the victim of intentional discrimination. *Borough of Economy v. Pennsylvania Human Relations Commis-*

6. Section 9(g) of the Act, 43 P.S. § 959(g), provides in relevant part that "[a]ny complaint filed pursuant to this section must be so filed within one hundred eighty days after the alleged act of discrimination."

7. The Union argues that the period of time between the filing of the complaint on September 1, 1992, and the date the hearing was conducted, July 26, 1995, is an unreasonable length of time, and, combined with the prejudice caused by Po-

nas' intervening death, it has established laches. However, this court previously rejected the same argument in *Beaver Cemetery*, where this court held there was not laches, even though the period between the filing of the complaint and the hearing was eight years.

8. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

*sion,* 660 A.2d 143 (Pa.Cmwlth.1995), *petition for allowance of appeal denied,* 543 Pa. 696, 670 A.2d 143 (1995).

The PHRC's conclusion that Ponas had been discriminated against on the basis of age was based on a finding that he was not placed sequentially on the out-of-work list, and that he would be put to work after members who were running out of unemployment and health benefits were placed, specifically mentioning that Ponas' was receiving social security and retirement. Because the receipt of social security payments and retirement benefits are highly correlative with age, the PHRC could reasonably infer that Ponas had been discriminated against on the basis of age. Consequently, the PHRC did not err in finding that the Business Agent's proffered reasons that Ponas did not receive a referral—that Ponas only requested "extra work" and that the hiring was done on a first-in first-out basis, were pretextual.[9]

### III.

Finally, the Union argues that even if Ponas did prove age discrimination, the award of back pay was excessive because it did not take into account that carpenters often work intermittently rather than each working day. Moreover, the Union contends that the record establishes that there were at least 12 carpenters who were out of work before Ponas made his request for work on May 12, 1992, and did not return to work in July or August 1992, and accordingly, the award is excessive.

Because of the lack of records, the PHRC calculated back pay from the date Ponas alleged he asked for a referral until the date the parties stipulated he refused a referral—the maximum amount of back pay possible in the circumstances. While recognizing that the PHRC is entitled to great deference in exercising the broad remedial powers that it has been given under the Act,[10] and that the award of back pay, as well as compensating the victim serves to discourage future discrimination, *Consolidated Rail Corporation v. Pennsylvania Human Relations Commission,* 136 Pa.Cmwlth. 147, 582 A.2d 702 (1990), the PHRC's opinion does not indicate that it considered the testimony of several union members and the manager of the Health and Welfare Fund in calculating the award of back pay. Because this testimony, if credited by the PHRC, would impact on the amount of back pay awarded,[11] we will remand for consideration of that testimony and reconsideration of the award of back pay.

### ORDER

AND NOW, this 1st day of May, 1997, the order of the Pennsylvania Human Relations

---

**9.** The Union also argues that the decision of the PHRC must be reversed because a number of its findings of fact are not supported by substantial evidence.

Our review of the record indicates that challenged Findings of Fact Nos. 15, 23, 24, 26 and 28 are supported by the direct testimony of the Business Agent, and, as such, are supported by substantial evidence. Findings of Fact Nos. 19 and 22 are supported by a letter Ponas wrote to the president of the international union that was received into evidence by the PHRC. The Union is correct in its assertion that the evidence cited by the PHRC as support for Findings of Fact Nos. 34 and 36 does not support those findings. However, because those findings have no impact on the PHRC's conclusions of law or its ultimate disposition of the case, we will not reverse the PHRC's decision on that basis.

**10.** Section (f)(1) of the Act, 43 P.S. § 959(f)(1), provides in relevant part:

If, upon all the evidence at the hearing, the Commission shall find that a respondent has engaged in or is engaged in any unlawful discriminatory practice as defined in this act, the Commission shall state its findings of fact, and shall issue and cause to be served upon the respondent an order requiring such respondent to cease and desist from such unlawful discriminatory practice and to take such affirmative action, including, but not limited to ... hiring, reinstatement or upgrading of employes, with or without back pay, ... as in the judgment of the Commission, will effectuate the purposes of this act.

**11.** In cases under the PHRC where a plaintiff has proven a violation of the Act but suffered no damages, nominal damages are appropriate. *Jackson and Coker, Inc. v. Lynam,* 840 F.Supp. 1040 (E.D.Pa.1993), *affirmed,* 31 F.3d 1172 (3d. Cir.1994).

Commission at No. E–61335–A, dated June 25, 1996, is vacated to the extent that it awards Complainant, Estate of Joseph Ponas, monetary damages and the matter is remanded for reconsideration of damages. In all other respects, the order of the Pennsylvania Human Relations Commission is affirmed.

Jurisdiction relinquished.