**Daniel H. PARKS, Petitioner**

v.

**PENNSYLVANIA HUMAN
RELATIONS COMMISSION,
Respondent.**

**USF Glen Moore, Inc., Petitioner**

v.

**Pennsylvania Human Relations
Commission, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 29, 2004.

Decided April 28, 2004.

John F. Siford, Altoona, for petitioner.

Laura A. Gargiulo, Harrisburg, for respondent, USF Glen Moore, Inc.

Stephanie M. Chapman, Harrisburg, for respondent, PA Human Relations Commission.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge LEAVITT.

Daniel H. Parks (Parks) has petitioned for review of the July 29, 2003 order of the Pennsylvania Human Relations Commission (Commission) directing U.S.F. Glen Moore, Inc. (Glen Moore) to pay damages to Parks for losses caused by Glen Moore's unlawful discriminatory acts.[1] Specifically, the Commission awarded Parks back pay and out-of-pocket expenses as compensation for Glen Moore's improper refusal to promote Parks by reason of his age; however, it declined to award damages resulting from Parks' discharge. Parks challenges the Commission's damage award as inadequate, and in its cross-petition Glen Moore asserts that the award is excessive and unfounded.

The facts of Parks' discrimination case were established in the complaint Parks filed with the Commission. Parks was employed by Glen Moore Transport, Inc., the corporate predecessor of Glen Moore,[2] as a driver.[3] In 1994, Parks sustained an injury to his left shoulder that caused him to lose several months of work during which time he collected total disability benefits. After he recovered, Parks returned to work as a driver recruiter.[4] In 1995, Parks was appointed Human Resources Director. In November 2000, Glen Moore

1. Section 5 of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955(a), provides in relevant part:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:
(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

2. In 1999, Glen Moore purchased Glen Moore Transport, Inc., which did not affect Parks' employment.

3. In 1991, Parks injured his shoulder causing him to lose time from work. When he returned to work he resumed his duties as a driver.

4. A driver recruiter is a light-duty position.

promoted Parks to the position of Safety Director, and one month later, Parks assumed responsibility for the Recruiting and Human Resources Departments because of the absence of Senior Vice President Dick McDonald. After McDonald returned to work part-time in January 2001, Parks continued to carry these responsibilities whenever McDonald was absent.

In January 2001, Glen Moore appointed a new President, Mark Martin. In February 2001, Parks asked Martin if he could be considered for McDonald's position. Martin responded that McDonald was not going to be replaced. Parks then inquired about an increase in pay for having assumed these additional duties to which Martin responded that he needed to review the situation.

In the spring of 2001, Glen Moore recruited Pamela Pierson Perrault, who was approximately 40 years old, for McDonald's position. Perrault accepted the position on July 9, 2001, at a salary of $90,000 per year, with an opportunity for bonuses.[5] Three days after hiring Perrault, Glen Moore discharged Parks, effective July 13, 2001. At the time, Parks was earning $860 per week and was 61 years old.[6]

On September 4, 2001, Parks filed a complaint with the Commission, alleging that Glen Moore denied him a promotion and terminated him on the basis of age. In his complaint, Parks alleged that he "was qualified to perform [his] job duties." Complaint ¶ 3(a)(2). The complaint was served on Glen Moore, but it did not file an answer.

On September 13, 2001, Parks filed a workers' compensation claim alleging that he sustained an injury to his right shoulder on May 24, 2001, which was aggravated on July 5, 2001.[7] Parks pursued this claim until early 2002 when he withdrew it after consulting with his attorney who advised him to pursue a disability claim with the Social Security Administration instead of a workers' compensation claim.

Meanwhile, Glen Moore failed to respond to Parks' age discrimination complaint. On January 3, 2002, the Commission staff filed a petition for a rule to show cause why Glen Moore's failure to file an answer should not result in a finding of probable cause and a judgment for Parks on the issue of liability.[8] The motions commissioner granted the petition, thereby giving Glen Moore until February 1, 2002,

---

5. In addition to her salary, Perrault received a $7,300 bonus for the 2001 year.

6. After Parks was discharged, he informed Crum and Forster, the insurance carrier handling his 1994 workers' compensation claim that he was no longer employed and sought reinstatement of his workers' compensation benefits. On November 9, 2001, Parks settled this workers' compensation claim with Crum and Forster for the sum of $80,000.

7. At a January 16, 2002 workers' compensation hearing, Parks indicated that he was seeking payment for loss of use of his right arm "because, at this point, with the condition and disability that I suffer in the right arm I have not been able to successfully work at a job." 1/16/02 Workers' Compensation Hearing Transcript at 28, 29 (W.C. Transcript

___). Parks further testified that although the injury to his right arm was not to the same extent as if his arm had been amputated, "[he had] loss of use, a limited loss of use." W.C. Transcript at 29.

8. 16 Pa.Code § 42.33(c) provides in relevant part:

If the Commission staff determines that a complaint sets forth sufficient facts to raise an inference of unlawful discrimination under the act, and the respondent has failed to deny these facts in an answer, or has filed to file a timely answer, the staff may petition the Commission, through the appropriate motions commission or examiner, for a rule to show cause why this failure should not result in a finding of probable cause, and a judgment for the complainant on the issue of liability.

to file an answer asserting defenses and explaining why the late answer should be permitted.[9]

Inexplicably, Glen Moore did not respond. As a result, the motions commissioner recommended to the Commission that it find probable cause, enter a judgment for Parks on the issue of liability and order the parties to attempt to conciliate.[10] On February 25, 2002, the Commission adopted the motions commissioner's recommendation, reasoning as follows:

> Because of [Glen Moore's] failure to file a verified answer, we hereby determine that from February, 2000 through July 9, 2001, [Glen Moore] denied [Parks] a promotion to the position of Head of Safety and Recruiting because of his age, 61. Further, that on July 12, 2001, [Glen Moore] terminated [Parks] because of his age, 61.
>
> Conciliation efforts shall be attempted and, within sixty days from the date of this order, the Pennsylvania Human Relations Commission's Harrisburg Regional Office shall report on the status of such conciliation efforts. In the event that either such efforts fail, or a status report is not timely made, a public hearing on the issue of damages is hereby approved.

2/25/02 Commission Order at 1–2.

Also in February 2002, Parks took his attorney's advice and filed an application with the Social Security Administration for disability insurance benefits. On that application, Parks stated as follows: "I became unable to work because of my disabling condition on July 13, 2001" and "I am still disabled." 3/13/02 Application for Disability Benefits at 1. Parks agreed to notify the Social Security Administration in the event his condition improved to the point that he would become able to work. Finally, Parks attested to the following:

> I know that anyone who makes or causes to be a made a false statement or representation of material fact in an application or for use in determining a right to payment under the social security act commits a crime punishable under federal law by fine, imprisonment or both. I affirm that all information I have given in connection with this claim is true.

*Id.* at 3.

In addition, Parks filed a Disability Report with the Social Security Administration, stating that he became unable to work due to injuries sustained on July 13, 2001.[11] Parks stated specifically that he had "degenerative joint disease and synovitis" and that "I can not [sic] lift my arms with out [sic] pain in my shoulders[.] I have great difficulty extending my arms out from my body." 3/15/02 Disability Re-

---

9.  16 Pa.Code § 42.33(c) provides in relevant part that after the staff files a petition for a rule to show cause, "[t]he Commissioner or examiner will then cause the rule to be issued and served on the respondent for a reply." 16 Pa.Code § 42. 33(d)(2) & (4) provides that:

> Upon consideration of the petition, replies to the rule to show cause, and other information as the motions commissioner or examiner may deem necessary or appropriate, the commissioner or examiner will do one of the following:
> (2) Order an answer to be filed by a date certain, with the failure to file resulting in

an appropriate order or recommendation under paragraph ... (4).
> (4) Recommend to the Commission a finding of probable cause, and the entry of a judgment for the complainant on the issue of liability, to be followed by a public hearing on the issue of damages if conciliation efforts fail.

10.  *See supra* n. 9.

11.  On the same form, Parks also indicated that he stopped working because he was terminated.

port Adult at Section 2A–B. Based on these representations, the Social Security Administration concluded that Parks had been disabled since July 13, 2001 and awarded him $1,027 per month in disability income beginning in January 2002.

On November 24, 2002, the Commission began its public hearing on the issue of Parks' damages caused by Glen Moore's age discrimination. Prior to the receipt of evidence, Glen Moore sought a ruling that Parks be judicially estopped from recovering damages because he had represented to the Social Security Administration that he was *unable* to work as of July 13, 2001, and had been awarded disability benefits based on that representation. Glen Moore argued that even if its actions were discriminatory and unlawful, they did not cause Parks any loss. Rather, it was Parks' degenerative disease that caused his earnings loss. The hearing examiner decided to reserve a ruling on the motion until the parties filed their post-hearing briefs.

After hearing the evidence and considering the briefs, the hearing examiner found that Parks was not entitled to damages on his age-based termination claim because he "consistently and vigilantly made repre-

sentations that as of July 13, 2001, he was completely unable to work due to a disability." Hearing Examiner Opinion at 13. However, the hearing examiner concluded that Parks was entitled to damages on his age-based denial of promotion claim in the amount of the difference between his earnings and Perrault's earnings from July 9, 2001, the day that Perrault was hired, until July 13, 2001, the effective date of Parks' termination and inception of his disability. Finally, the hearing examiner concluded that Parks was entitled to be reimbursed for his out-of-pocket expenses in pursuing his complaint. The Commission adopted the hearing examiner's recommendation. Parks then petitioned this Court for review, and Glen Moore filed a cross-petition.[12]

■ On appeal,[13] Parks contends that the Commission erred by applying the doctrine of judicial estoppel to preclude the award of damages on his termination claim. Parks also contends that the Commission failed to award him sufficient damages on his failure to promote claim. We will address these arguments *seriatim.*

■ Initially, we note that Section 9(f)(1) of the Act, 43 P.S. § 959(f)(1),[14]

---

**12.** On September 11, 2003, this Court designated Parks as the appellant. The Commission filed a brief defending the Commission's order.

**13.** In reviewing a decision of the Commission, our scope of review is limited to a determination of whether there was a violation of constitutional rights, an error of law, or whether findings of fact necessary to support adjudication are supported by substantial evidence. *Consolidated Rail Corporation v. Pennsylvania Human Relations Commission,* 136 Pa. Cmwlth. 147, 582 A.2d 702, 705 (1990).

**14.** It states in relevant part that:
(f)(1) If, upon all the evidence at the hearing, the Commission shall find that a respondent has engaged in or is engaging in any unlawful discriminatory practice as de-

fined in this act, the Commission shall state its findings of fact, and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful discriminatory practice and to take such affirmative action, including, but not limited to, reimbursement of certifiable travel expenses in matters involving the complaint, compensation for loss of work in matters involving the complaint, hiring, reinstatement or upgrading of employes, with or without *back pay* ... and any other verifiable, *reasonable out-of-pocket expenses caused by such unlawful discriminatory practice,* provided that, in those cases alleging a violation of section 5(d), (e) or (h) or 5.3 where the underlying complaint is a violation of section 5(h) or 5.3, *the Commission may award*

charges the Commission with the task of devising a remedy to "effectuate the purposes of this [A]ct." The Commission has broad discretion when fashioning an award, and its actions are entitled to deference by a reviewing court. The Commission's order will not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than can be fairly said to effectuate the policies of the Act. *Lincoln Realty Management Co. v. Pennsylvania Human Relations Commission,* 143 Pa.Cmwlth. 54, 598 A.2d 594, 600 (1991).

Parks contends that the Commission erred by applying the doctrine of judicial estoppel to preclude the award of damages on his termination claim. Parks argues that by applying the doctrine, the Commission gave Glen Moore an opportunity to lodge a collateral attack on the Commission's finding that Parks was qualified to work. Stated otherwise, the Commission gave Glen Moore the ability to challenge the judgment that Glen Moore had discriminated against Parks on the basis of age.[15] Parks' Brief at 11.

However, the Commission did not expressly, or even implicitly, apply the doctrine of judicial estoppel to preclude the award of damages. Instead, the Commission denied Parks damages resulting from his unlawful termination because "Parks consistently and vigilantly made represen-

tations that as of July 13, 2001, he was completely unable to work due to a disability" and based on that representation collected "substantial social security benefits." Hearing Examiner Opinion at 13. The Commission's decision is supported by the law.

■ A terminated employee is entitled to be made whole for losses sustained as a result of wrongful termination. The award of damages, in the form of back pay, serves not only the purpose of restoring the injured party to his pre-injury status and making him whole but also serves to discourage future discrimination. *Consolidated Rail Corp. v. Pennsylvania Human Relations Commission,* 136 Pa.Cmwlth. 147, 582 A.2d 702, 708 (1990); *Williamsburg Community School District v. Pennsylvania Human Relations Commission,* 99 Pa.Cmwlth. 206, 512 A.2d 1339, 1342 (1986). However, as a general rule a terminated employee will not be allowed back pay during any periods of disability. *Starceski v. Westinghouse Electric Corp.,* 54 F.3d 1089, 1101 (3rd Cir.1995). The reason is that the employer found to have engaged in unlawful discrimination is nonetheless not responsible for salary loss unrelated to the discrimination. *Mason v. Association for Independent Growth,* 817 F.Supp. 550, 554 (E.D.Pa.1993).

---

*actual damages,* including damages caused by humiliation and embarrassment, as, *in the judgment of the Commission, will effectuate the purposes of this act,* and including a requirement for report of the manner of compliance.

43 P.S. § 959(f)(1) (emphasis added).

**15.** To establish a *prima facie* case for age discrimination under Section 5(a) of the Act, the complainant must establish that he applied for a job for which he was qualified; he is a member of a protected class; his application was rejected; and the employer continued to seek other applicants of equal qualifi-

cation. *United Brotherhood of Carpenters and Joiners of America, Local 261 v. Pennsylvania Human Relations Commission,* 693 A.2d 1379, 1383 (Pa.Cmwlth.1997). Once a complainant has established a prima facie case, the burden shifts to the employer to produce evidence of a legitimate non-discriminatory reason for its actions, and, if such evidence is present, then the complainant must prove by preponderance of the evidence that the proffered reasons were pretextual and that the complainant was the victim of intentional discrimination. *Id.*

Here, Parks represented to the Social Security Administration and to the Workers' Compensation Judge (WCJ) that he was completely unable to work as of July 13, 2001 due to a disability. Specifically, Parks represented to the Social Security Administration, under penalty of perjury, that he was "unable to work because of [his] disabling condition on July 13, 2001," rendering him unable to lift his arms without pain in his shoulders. 3/13/02 Application for Disability Payments at 1. Based on these representations Parks received disability benefits and continues to receive such benefits.[16] Parks also represented to the WCJ, when he was pursuing his workers' compensation claim, that he was not "able to successfully work at a job" and that he was unable to find employment because of his impairment. W.C. Transcript at 29.

Nevertheless, Parks contends that he consistently stated that he was able to perform his job duties as the Human Resources and Safety Director for Glen Moore. Parks' Brief at 16. To the Social Security Administrative representative, who interviewed him, Parks stated that [17]

he could do all of the jobs he had performed at Glen Moore over the last ten (10) years except for driving ... [because] ... he was not asked that question and the questions he was asked were specific regarding what he could or could not do ... A review of the forms

for Social Security disability benefits reveals that the questions contained on them are largely 'yes' or 'no' type questions which do not require additional explanation.

*Id.* at 16–17. Further, Parks contends that he told the WCJ that his injury did not stop him from working because "he had a 'limited use' of his arm and that because of the impairment he was not able to find employment." *Id.* at 18.

■ However, the Commission did not credit Parks' testimony in this regard. Specifically, the Commission concluded that,

It was clear that Parks did not make a confused blunder when he told both the Social Security Administration and [the] worker[s'] compensation [judge] that he was unable to work. Indeed, his assertions were done with clarity and [were] manipulative. Parks continues to receive substantial social security benefits which supports the conclusion that Parks considers himself as disabled.

Hearing Examiner's Opinion at 13. Questions of witness credibility and the weight of the evidence are for the Commission to decide. *Albert Einstein Medical Center, Northern Division v. Pennsylvania Human Relations Commission,* 87 Pa. Cmwlth. 145, 486 A.2d 575, 576 (1985).[18]

We uphold the Commission's decision to deny Parks' request for damages on his

16. To receive Social Security disability benefits, an applicant must have a "physical ... impairment or impairments ... of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

17. Parks contradicts himself in his own brief. He also argues that he "informed the Social Security representative that interviewed him

that he could work with some restriction." Parks' Brief at 17.

18. Further, Parks relies on the testimony of Glen Moore's vocational expert, who testified that he was able to work, to support his position. Parks' Brief at 16. However, the Commission did not expressly rely on the testimony of Glen Moore's vocational expert to support its conclusion; thus, by implication the Commission did not find his testimony credible.

termination claim.[19] Parks' improper termination did not cause a loss that the Commission needed to redress in order to make him whole. In fact, he was physically unable, according to his own sworn statements, to perform any work after July 13, 2001.

■ Parks next contends that the Commission erred by failing to award him damages from February 2001, when he requested Martin to consider him for the promotion, through July 9, 2001, the date of Perrault's hire. Parks argues that neither the Commission nor the hearing examiner considered his request for an award of backpay to commence in February 2001 which denied him relief "which would restore him to the status that he should have had." Parks' Brief at 22.

In its appeal, on the other hand, Glen Moore contends that the Commission erred by awarding Parks backpay for the four day period from July 9, 2001 through July 13, 2001 because "the hearing examiner presumes without factual foundation that the date Perrault was hired, July 9, 2001, is also the date that Perrault started, thereby triggering a back pay obligation."

Glen Moore's Brief at 8. The only reference to this date is in Parks' complaint wherein he alleges that "[a]t the July 9, 2001, staff meeting, Mr. Martin announced that Pam Pierson [Perrault] age in forties, was being hired to replace Mr. McDonald, as head of safety and recruiting departments, *effective July 16, 2001.*" Glen Moore's Brief at 8–9.

However, the Commission determined that Parks sustained an injury triggering his failure to promote claim on July 9, 2001 because it found that Glen Moore had decided to hire Perrault as of that date. The Commission's determination is supported by Parks' complaint. To the extent that Glen Moore challenges this finding, it is too late; it failed to file an answer to Parks' complaint. *See* 16 Pa.Code § 42.33(b) ("Averments of fact in the complaint are admitted if not denied specifically or by necessary implication in a timely answer."). The Commission determined that Parks was injured as of July 9, 2001, and it awarded Parks damages to make him whole. Because the Commission acted within its authority, we will not disturb the Commission's award of damages.[20]

**19.** Parks also contends that Glen Moore waived the argument of judicial estoppel by failing to file an answer to the complaint. However, the Commission did not apply the doctrine. Thus, we need not address this argument.

**20.** Glen Moore also contends that Parks' claim for damages is barred by the doctrine of accord and satisfaction due to the settlement of his 1994 workers' compensation claim. *See supra* n. 6. However, this argument is without merit because the 1994 settlement provided that the parties entered the agreement,

to effectuate a full and final settlement of the indemnity portion *of the claimant's 4/27/94 work accident.* The claimant has agreed to release the defendant from any and *all liability relating to the 4/27/94 work accident* for indemnity benefits in exchange for the lump sum payment of $80,000.00

relating to those incidents. The defendant will have no further responsibility for the payment of any additional indemnity and benefits for any injuries known or unknown *arising out of the 4/27/94 work accident* .

Compromise and Release Agreement by Stipulation, ¶ 16.

However, the doctrine of accord and satisfaction is an affirmative defense that should include allegations that an offer of money was made in satisfaction of the account, that the offer was accompanied by a declaration that if the payment was accepted, it was to be in satisfaction, and that the party to whom the offer was made was informed at the same time that it was to be in full settlement of the account. *See* 5 Standard Pennsylvania Practice 2d *Accord and Satisfaction* § 27:13 (2001).

Here, Glen Moore waived the defense by failing to file an answer to the complaint and even if it did not waive it, the defense does

Accordingly, we affirm the decision of the Commission.

### ORDER

AND NOW, this 28th day of April, 2004 the order of the Pennsylvania Human Relations Commission dated July 29, 2003 in the above-captioned matter is hereby affirmed.

\* \* \*

\* \* \*

not apply because Parks is alleging a new disability as indicated by his filing the claim petition September 13, 2001 alleging an injury to the right shoulder on May 24, 2001 which was aggravated on July 5, 2001.